Laramore, Judge,
delivered the opinion of the court:
Plaintiff, a veteran, was employed by the New York City Eegional Eenegotiation Board on December 22, 1952, as a Eenegotiator, GS-14, at a salary of $9600 per annum. The appointment was an excepted appointment (indefinite) pursuant to section 107 (c) of the Eenegotiation Act of March 23, 1951, 65 Stat. 7, 20, which provided in pertinent part:
The Board is authorized, subject to the Classification Act of 1949 (but without regard to the civil-service laws and regulations), to employ and fix the compensation of such officers and employees as it deems necessary to assist it in carrying out its duties under this title.
On August 1, 1956, the above Act was amended by Public Law 870, 84th Congress, 2d session, 70 Stat. 786, 791. The Act, as amended, provided in pertinent part:
The Board is authorized, subject to the Classification Act of 1949 and the civil-service laws and regulations to employ and fix the compensation of such officers and employees as it deems necessary to assist it in carrying out its duties under this title.
Upon being notified of the proposed amendment, supra, Walter J. Johnston, Director, Division of Eenegotiating, took the following action relevant to recommending present employees for conversion to permanent status:
*****
I reviewed the capabilities, performance, background, workload, type of cases, and projected assignment load of each Eenegotiator and came to the conclusion that with one or two exceptions all of the Eenegotiators, GS-14, would receive my recommendation for conversion.
Since we had two Eenegotiators, Messrs. Warren Schaller and Carl Malmstrom, handling construction cases and in view of the Amendment to Section 106 (a) (9) of the Act approved August 3, 1955, effective after December 31,1954, which, in effect, exempted from renegotiation construction contracts awarded as a result of formally advertised competitive bids, I knew that assignment of construction cases, already at a low ebb, would dwindle considerably and that the back log of these particular type of cases would decrease further.
In reviewing the performance and background of the two construction Eenegotiators I found that neither man *45 had any previous experience except mainly in the construction field. With this in mind I had to make a choice as to which of the two construction men I would recommend. Based on the thorough analysis of the capability and potential of each man, it was my opinion that Mr. Malmstrom was (1) the better construction Renegotiator, and (2) that comparatively he possessed more renegotiation ability which would permit me at some future date to gradually work him into handling other cases. Since Mr. Schaller in my opinion could not be readily transferred to the handling of manufacturing cases, particularly in the aircraft, guided missile and electronic field, which was the bulk of our new assignments, I felt that a recommendation for conversion would not be warranted. On this basis, a report was made to the Chairman.
Beginning with the latter part of July 1956 “conversion” was a main topic of conversation in this office. Mr. Schaller repeatedly expressed to me his desire to gain status for the purpose of obtaining the benefits that accrue to such employees. Mr. Schaller had spent several years in the Government service prior to coming with renegotiation and so far as I knew he had the required minimum number of years to qualify for Civil Service Eetirement, should he acquire status.
In the latter part of July or the early part of August 1956,1 discussed with Mr. Schaller the declining number of construction cases in the New York Regional Board and their progressive curtailments due to the exemption of competitive bid construction contracts pursuant to the amendment under Section 106(a) (9) of the Renegotiation Act, as approved August 3, 1955, and Section 1453.7 of the Renegotiation Board Regulations, as amended. I told him that under those circumstances and because of the Board’s contemplated reduced budget it would be superfluous for this Regional Board to have more than one Renegotiator assigned to construction cases. I added that when that time came, Mr. Schaller might prefer to resign rather than be involuntarily separated in a reduction-in-force since there was no other position as Renegotiator, GS-14, which in my opinion he could fill. Mr. Schaller remarked that he was primarily interested in conversion to status in order to have the benefits thereof. _ Feeling a personal responsibility because I had originally recommended him to this Regional Board, I told Mr. Schaller that if he tendered his resignation I would recommend his conversion to status. I asked him to think it over and let me know.
*46 On September 14, 1956 I asked Mr. Scballer for bis decision. Since be would not give me a definite reply I advised the Chairman to send bis papers to Headquarters without our recommendation for conversion.
Plaintiff did not submit bis resignation and be was neither recommended for nor given conversion to competitive status. On September 18, 1956 he was notified that he was to be retained in status quo.
At or about that time Mr. Malmstrom was given permanent civil service status. He was a non-veteran who had over 20 years of Government service.
Plaintiff appealed the fact that he was not recommended or given conversion to competitive status to the Second Civil Service Eegion. In the decision of the Second Civil Service Eegion the Eegional Director stated that pursuant to Civil Service Eegulation 3.101 an employee to be considered for conversion must be recommended by his agency, that this recommendation was discretionary with the agency, and that neither the Veterans’ Preference Act of 1944, nor any other authority, provided for an appeal to the Civil Service Commission when an agency elects not to recommend an employee for conversion under this Eegulation.
Plaintiff did not appeal this decision to the Civil Service Commission Board of Appeals and Eeview.
By letters dated June 26 and July 8, 1957 notice of proposed reduction in force was given to plaintiff, wherein he was notified that he was in retention subgroup 3-A on the Eetention Eegister. Effective July 31, 1957 plaintiff was separated pursuant to a reduction in force. As of that date plaintiff’s Government service totaled slightly in excess of nine years.
The Eetention Eegister as of July 25, 1957 reveals that of the GS-14 Eenegotiators in the New York Eegional Office of the Board, plaintiff alone was in subgroup 3-A. One person was in subgroup 2-A, and six in subgroup 1-B, including Malmstrom. These six had apparently all been given conversion to permanent status and all were non-veterans.
On July 5, 1957 plaintiff appealed the proposed reduction in force to the Civil Service Commission. His chief com *47 plaint was that he should have been given permanent civil service status in September 1956.
After a hearing, his appeal was denied by the Appeals Examining Office for the reason that the issue of conversion to civil service status could not be reopened and reconsidered in connection with plaintiff’s reduction in force because this issue had already been considered by the Second Eegional Office, which had advised him that the agency decision on that matter was final. The Appeals Examining Office also stated that if plaintiff had disagreed with the decision of the Second Region in November 1956, he should have appealed to the appropriate Civil Service Commission authorities in Washington, D.C., with reasonable promptness.
Plaintiff thereafter appealed to the Board of Appeals and Review, which Board on October 14, 1957 affirmed that the issue of conversion could not be reopened, and stated that because plaintiff had not been converted, as it was the right of the agency not to do, he had been properly reached in the reduction in force action.
This suit resulted, in which plaintiff sues for back pay from the effective date of the reduction in force.
Under these facts two questions are presented for decision : (1) Was the action of the agency in denying plaintiff conversion to status except on the condition that he sign a resignation in blank, and then assigning him to the lowest level on the Retention Register and eventually separating him through a reduction in force, an arbitrary action in violation of plaintiff’s rights; (2) did plaintiff exhaust his administrative remedies.
The Renegotiation Act, supra, clearly shows that plaintiff was employed subject to the Classification Act of 1949, 63 Stat. 954, 972.
Section 1104 of the Classification Act, supra, provides:
Nothing in this Act shall be construed to affect the application to officers and employees to whom this Act applies of the veteran-preference provisions in the Civil Service Act, as amended, and the Veterans’ Preference Act of 1944, as amended.
Therefore, it is clear that since plaintiff’s employment was subject to the Classification Act of 1949, he was entitled to veterans’ preference.
*48 Section 2 of tlie Veterans’ Preference Act of 1944, 58 Stat. 387, provides in pertinent part:
In certification for appointment, in appointment, in reinstatement, in reemployment, and in retention in civilian positions in all establishments, agencies, bureaus, administrations, projects, and departments of the Government,_ permanent or temporary, and in either (a) the classified civil service; (b) the unclassified civil service; (c) any temporary or emergency establishment * * *, preference shall be given to * * * (4) those ex-servicemen * * * who have served on active duty * * * and have been separated therefrom under honorable conditions.
Thus the situation is this: Plaintiff must have been qualified for conversion to civil service status. Otherwise, Mr. Johnston, the Director of the Division, could not have converted plaintiff even had he signed the blank resignation. Consequently, we must assume that plaintiff was qualified for conversion, and we can see no reason why plaintiff’s blank resignation should have been required. Had he signed such a resignation and was at some time discharged as a result thereof, we think some court would without hesitation order his restoration on the theory that the resignation was coerced. At any rate, such a restoration would seem to be a fair and just result.
Had the agency director not recommended plaintiff for conversion to status because he felt he did not possess the necessary qualifications or was inferior to other employees, we would say he was entirely correct and within his rights. However, the refusal to convert plaintiff, based upon his failure to sign the blank resignation, appears to us to be an act designed to remove plaintiff, and as such was arbitrary, capricious and in violation of plaintiff’s rights. In other words, if his failure to sign the resignation in blank was the only reason why plaintiff was not converted to status, and it appears to be the sole reason, the agency was in error in not so doing. We say this because it has always been the congressional policy to grant veterans a preference in obtaining and keeping Government employment. Flanagan v. Young, 228 F.2d 466.
*49 Under these circumstances, the only possible bar to plaintiff’s recovery would be either his failure to exhaust his administrative remedy or lack of proof that some nonveteran with less retention rights was retained when plaintiff was removed by the reduction in force action.
Turning first to the question of plaintiff’s failure to exhaust his administrative remedy, the defendant contends that plaintiff should have further appealed the decision of the Second Civil Service Region. In this respect, we think the Second Civil Service Region was correct when it decided that “Neither the Veterans’ Preference Act of 1944 nor any other authority provides for an appeal to the Civil Service Commission when an agency elects not to recommend an employee for conversion under this regulation.” Civil Service Regulation 3.101 deals with acquisition of competitive status and provides for its acquisition only upon recommendation by the employing agency, which recommendation must be approved by the Civil Service Commission. The only appeal provided for in the regulations is in subparagraph (f) which provides that where the Civil Service Commission disapproves an employing agency’s recommendation that one of its employees have competitive status, the employing agency or the employee may request the Civil Service Commission to review its action of disapproval within six months of such disapproval. This was not the situation presented in the case at bar. We can find no law or regulation which would either require or give right to an appeal under these circumstances and apparently the Second Civil Service Region also could find none. Therefore, we conclude that plaintiff has not failed to exhaust any available administrative remedy.
The question then is what non-veteran with less retention rights was retained in preference to plaintiff.
Had plaintiff been converted to status as we believe he could and should have been, he would have occupied a place in Group 1-A on the Retention Register. 5 CFR 20.4(c)[1]. As a Group 1-A employee plaintiff was entitled to preference *50 over tbe employees in Group 1-B and the one employee in Group 2-A. 5 CFR 20.4, supra.
In conclusion, if the employing agency had exercised its discretion properly, this court could do nothing. If the employing agency abused its discretion in refusing to recommend status for plaintiff, this court can render judgment for plaintiff. And while the court will not normally review discretionary acts of the Government agency, it will do so if they are arbitrary. Crocker v. United States, 130 Ct. Cl. 567.
Since the agency director refused to recommend plaintiff for status, we think this refusal was an abuse of discretion on the part of the agency director which amounted to arbitrary action and plaintiff is entitled to recover the salary lost from the date of his dismissal to date of judgment, less any outside earnings. Judgment will be entered to this effect. The amount of recovery will be determined pursuant to Rule 38 (c) of the Rules of this court.
It is so ordered.
Durfee, Judge; Madden, Judge; and JoNes, Chief Judge, concur.
Whitaker, Judge, took no part in the consideration and decision of this case.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner William E. Day, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff, a veteran, was employed pursuant to an appointment by the Renegotiation Board on December 19, effective December 22, 1952, to a position as Renegotiator, in grade GS-14 at a salary of $9,600. This appointment was an excepted appointment (indefinite) pursuant to P.L. 9, 82nd Congress, and had been made without regard to Civi] Service laws and regulations. The plaintiff’s duty station was at the New York City Regional Board in the Division of Renegotiating.
2. At the time of his employment, the Act of March 23, 1951, C. 15, Title 3, § 107(c), 65 Stat. 19, 50 U.S.C.A. App. *51 § 1217(c) was in force and provided in pertinent part as follows:
The Board is authorized, subject to the Classification Act of 1949 (but without regard to the civil-service laws and regulations), to employ and fix the compensation of such officers and employees as it deems necessary to assist it in carrying out its duties under this title.
By Public Law 870, 84th Congress, 50 U.S.C.A. App. 1211 et seq. Section 107 (c) was amended to become effective August 1,1956, as follows:
The Board is authorized, subject to the Classification Act of 1949 and the Civil Service laws and regulations to employ and fix the compensation of such officers and employees as it deems necessary to assist it in carrying out its duties under this title.
3. Walter J. Johnston, Director, Division of Renegotiating, upon being notified of the proposed amendment to Section 107 (c) took the following action relevant to recommending present employees for conversion to permanent status: $$$$$$
I reviewed the capabilities, performance, background, workload, type of cases, and projected assignment load of each Renegotiator and came to the conclusion that with one or two exceptions all of the Renegotiators, GS-14, would receive my recommendation for conversion.
Since we had two Renegotiators, Messers. Warren Schaller and Carl Malmstrom, handling construction cases and in view of the Amendment to Section 106 (a) (9) of the Act approved August 3, 1955, effective after December 31,1954, which, in effect, exempted from renegotiation construction contracts awarded as a result of formally advertised competitive bids, I knew that assignment of construction cases, already at a low ebb, would dwindle considerably and that the back log of these particular type of cases would decrease further.
In reviewing the performance and background of the two construction Renegotiators I found that neither man had any previous experience except mainly in the construction field. With this in mind I had to make a choice as to which of the two construction men I would recommend. Based on the thorough analysis of the capability and potential of each man, it was my opinion that Mr. Malmstrom was (1) the better construction Renegotiator, and (2) that comparatively he possessed more re *52 negotiation ability which would permit me at some future date to gradually work him into handling other cases. Since Mr. Schaller in my opinion could not be readily transferred to the handling of manufacturing cases, particularly in the aircraft, guided missile and electronic field, which was the bulk of our new assignments, I felt that a recommendation for conversion would not be warranted. On this basis, a report was made to the Chairman.
Beginning with the latter part of July 1956 “conversion” was a main topic of conversation in this ofiice. Mr. Schaller repeatedly expressed to me his desire to gain status for the purpose of obtaining the benefits that accrue to such employees. Mr. Schaller had spent several years in the Government service prior to coming with renegotiation and so far as I knew he had the required minimum number of years to qualify for Civil Service ¡Retirement, should he acquire status.
In the latter part of July or the early part of August 1956,1 discussed with Mr. Schaller the declining number of construction cases in the New York Regional Board and their progressive curtailments due to the exemption of competitive bid construction contracts pursuant to the amendment under Section 106(a) (9) of the Renegotiation Act, as approved August 3,1955, and Section 1453.7 of the Renegotiation Board Regulations, as amended. I told him that under those circmnstances and because of the Board’s contemplated reduced budget it would be superfluous for this Regional Board to have more than one Renegotiator assigned to construction cases. I added that when that time came, Mr. Schaller might prefer to resign rather than be involuntarily separated in a reduction-in-force since there was no other position as Renegotiator, GS-14, which in my opinion he could fill. Mr. Schaller remarked that he was primarily interested in conversion to status in order to have the benefits thereof. Feeling a personal responsibility because I had originally recommended him to this Regional Board, I told Mr. Schaller that if he tendered his resignation I would recommend his conversion to status. I asked him to think it over and let me know.
On September 14, 1956 I asked Mr. Schaller for his decision. Since he would not give me a definite reply I advised the Chairman to send his papers to Headquarters without our recommendation for conversion.
4. The plaintiff did not submit his resignation. He was neither recommended for nor given conversion to competitive *53 status. On September 18,1956, lie was notified that lie was to be retained in status quo. That notice indicates that by that time an increase in salary had taken place so that his salary was $10,750 per annum.
5. Mr. Malmstrom at or about this time was given permanent Civil Service status. He was a non-veteran who had over 20 years of Government service.
6. Apparently the plaintiff, on October 29,1956, appealed the action referred to in finding 4. On November 23, 1956, the following letter from the regional director of the Second Civil Service Region (New York) was sent to the plaintiff:
As you know, to be considered for conversion under Regulation 3.101, an employee must be recommended by his agency. This recommendation is discretionary with the agency. Neither the Veterans Preference Act of 1944 nor any other authority provides for an appeal to the Civil Service Commission when an agency elects not to recommend an employee for conversion under this regulation.
The agency discussions with you regarding resignations are within the general authority of the agency, and are not within the scope of the Veterans Preference Act. An agency may request an employee to resign, but the employee is not thereby required to resign merely because he is asked to do so. That decision rests with the employee alone.
7. No further appeal action was taken by the plaintiff on the failure of his agency to convert his position to a permanent status.
8. Effective July 31,1957, the plaintiff was separated from his position pursuant to reduction-in-force action. Notice of this proposed action had been given to him by letters dated June 26 and July 8, 1957, in which he was notified that he was in retention subgroup 3-A on the retention register of the New York Regional office. On July 31, 1957, plaintiff’s Government service was a total of slightly in excess of nine years.
9. An examination of the retention register, as of June 26, 1957, reveals that of the GS-14 renegotiators in the New York regional office of the Board, plaintiff alone was in subgroup 3-A. One person was in 2-A and six in 1-B, including Malmstrom. These six apparently had all been given con *54 version to permanent status. These sis individuals were non-veterans.
10. On July 5,1957, the plaintiff appealed to the Appeals Examining Office, Civil Service Commission, from the proposed reduction-in-force action facing him. His chief complaint was that he should have been given permanent civil service status in September 1956.
11. On August 20,1957, after requesting and receiving further information concerning the separation from the plaintiff, and also apparently after a hearing held in the matter, the Appeals Examining Office in denying the appeal, advised the plaintiff in part as follows:
In your letter of July 5, 1957 and in the course of the hearing on your appeal held on July 26, 1957, you contended that officials of The New York Renegotiation Board erred or acted unlawfully in September 1956 in not recommending that you be accorded a competitive civil service status, under Civil Service Regulation 3.101, when your position was brought into the competitive service.
The information available to us indicates that all of the facts relating to the question of your conversion to civil service status have been previously considered by the Commission's Second Region, which advised you in November 1956 that the agency decision on this matter was final. It is our decision that this issue cannot be reopened and reconsidered at this time in connection with your reduction in force appeal. If you were dissatisfied with the determination of the Second Region on the question of your conversion to competitive status, you should have expressed such dissatisfaction to appropriate officials of the Commission in Washington, D.C., with reasonable promptness.
12. Plaintiff appealed to the Civil Service Commission Board of Appeals and Review which, by letter dated October 14,1957, advised plaintiff in part as follows:
In your appeal to the Board of Appeals and Review you state that “Mr. Schaller was entitled to preference in conversion to competitive status.” As Mr. Schaller was informed by the Appeals Examining Office in its decision “this issue cannot be reopened and reconsidered at this time in connection with your reduction in force appeal.”
*55 The Board’s review of representations made by you and of the material contained in the file concerning Mr. Schaller’s case does not reveal that Mr. Schaller has been deprived of any benefits available to an employee in Subgroup III, in which group he was properly considered inasmuch as the agency of his employment, as was its right, decided not to convert him to competitive status but rather elected to retain him in status quo following the action by which positions in the Benegotiation Board were included in the competitive classified service.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and judgment will be entered to that effect.
The amount of recovery will be determined pursuant to Buie 38 (c) of the Buies of this court.

 Within each tenure group, employees entitled to veterans’ preference are in subgroup “A” and others in subgroup “B”. 5 CFR 20.4(c)(4).