**Armand Edward BLACKMAR**

v.

**The UNITED STATES.**

**No. 417–61.**

United States Court of Claims.

Dec. 17, 1965.

Rene R. Nicaud, New Orleans, La., for plaintiff.

Mary J. Turner, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM: *

### THE 1955 REDUCTION-IN-FORCE

The plaintiff, a former civilian employee of the defendant, sues first in this case for salary payments covering the period subsequent to October 31, 1955. On that date, the plaintiff was separated from the Government service by the Regional Office of the Veterans Administration at New Orleans, Louisiana, pursuant to a reduction-in-force action.

During his employment by the Veterans Administration, the plaintiff was a veteran preference eligible under the provisions of the Veterans' Preference Act of 1944, as amended (5 U.S.C. § 851 et seq. (1952)), having served honorably on active duty in the Armed Forces of the United States during World War I.

The case is presented to the court on the defendant's motion for summary judgment. In support of its motion, the defendant has submitted 45 documents for the consideration of the court. The plaintiff, in opposing the motion, has submitted 34 documents for the court's consideration.

The present litigation is in the nature of a sequel to the earlier case of Blackmar v. United States, 120 F.Supp. 408, 128 Ct.Cl. 693 (1954). The previous case involved the action of the New Orleans Regional Office of the Veterans Administration in discharging the plaintiff on March 2, 1947, from his indefinite appointment as an Authorization Officer, P–4, salary $5,152.80 per annum. That dismissal was based upon charges alleging that the plaintiff was inefficient,

that he was a disturbing element among his fellow employees, and that he had made false, malicious, and unjustifiable statements of an extremely serious nature against his official supervisors and associates. The plaintiff sued in this court to recover his salary for the period subsequent to March 2, 1947, contending that his discharge on that date was unlawful because it was in violation of Section 14 of the Veterans' Preference Act of 1944. The court concluded (120 F. Supp. at page 416, 128 Ct.Cl. at page 707) that the plaintiff's discharge was procedurally defective because it "was based, in part, on charges which were not set out 'specifically and in detail' as required by section 14 of the Veterans' Preference Act," and because "it was accomplished by procedures in the appellate stage which made it impossible for plaintiff to conduct his defense of the agency's appeal on the basis of charges specifically stated." In this connection, the court emphasized (120 F.Supp. 408, 416, 128 Ct.Cl. at page 708) that no opinion was being expressed on the merits of the plaintiff's dismissal. The court held (120 F.Supp. at page 416, 128 Ct.Cl. at page 708) that the plaintiff was "entitled to recover the amount which he would have received as salary had he not been separated, less any amounts earned by him during the interim."

The amount due the plaintiff under the court's 1954 decision was subsequently agreed upon by the parties in the form of a stipulation, and a judgment awarding the plaintiff $25,000 and finally disposing of the prior litigation was entered by the court on February 8, 1955 (130 Ct.Cl. 812).

On April 18, 1955, the plaintiff was restored to the position in the New Orleans Regional Office of the Veterans Administration from which he had been discharged on March 2, 1947. During the intervening period, the title of the position had been changed to Supervisory Adjudicator, GS–11, and the salary had

---

* This opinion incorporates, with some changes relating to the 1955 reduction-in-force, the opinion prepared, at the direction of the court under Rule 54(b), by Trial Commissioner Mastin G. White.

been increased to $6,605 per annum. The official document effecting this action referred to the plaintiff as an "Indefinite Employee," and stated that the reason for the action was "Restoration as result of U.S. Court of Claims Decision in Blackmar v. U.S. Court of Claims No. 170–52 decided April 6, 1954."

On September 27, 1955, the New Orleans Regional Office of the Veterans Administration delivered to the plaintiff a communication notifying him that he would probably be removed from his position effective at the close of business on October 28, 1955, pursuant to a reduction-in-force action. The communication stated in part as follows:

> Due to budgetary limitations we are required to reduce the number of personnel currently on the rolls at this station.
>
> After a careful analysis and review of the staffing in the various divisions, it has been determined that you will probably be affected by this reduction in personnel. It is contemplated that reduction-in-force action will be taken to remove you from your present position effective at the close of business October 28, 1955.
>
> \*   \*   \*   \*   \*
>
> Prior to the effective date of any final action, you will be issued a specific notice in writing setting forth any possible reassignment and/or retreat rights to which you may be entitled in accordance with your full rights and privileges under the U.S. Civil Service reduction-in-force regulations and the Veterans Administration policies. Upon receipt of the specific notice, you will be afforded ten (10) days after the date of such notice to appeal the reduction-in-force action.

Three days later, on September 30, 1955, the New Orleans Regional Office delivered to the plaintiff a formal reduction-in-force notice, stating in part as follows:

> Reference is made to our letter to you dated September 27, 1955, advising you that you would probably be separated from your present position by reduction in force procedure effective October 28, 1955.
>
> In view of the fact that it has not been possible to offer you a reassignment to a continuing position in this Regional Office, it becomes necessary to separate you effective October 28, 1955. This is your specific notification of final action. For reduction in force purposes you are in Retention group III–A, indefinite employee.

By means of a communication dated October 28, 1955, and addressed to the plaintiff, the New Orleans Regional Office modified the reduction-in-force notices of September 27 and 30 so as to extend the plaintiff's period of active duty to the close of business on October 31, 1955.

In accordance with the reduction-in-force notices previously mentioned, the plaintiff was separated from his position as Supervisory Adjudicator, GS–11, at the close of business on October 31, 1955. He was the only employee of the New Orleans Regional Office separated from the service by reduction-in-force at the time.

The petition does not allege—and the documents before the court do not reveal—any facts tending to show that the procedural regulations of the Civil Service Commission governing reductions in force (5 CFR (1949 Ed.), Part 20) were violated in connection with the plaintiff's separation from the service on October 31, 1955, or that his retention rights as a veteran serving under an indefinite appointment were ignored.

█ Although the plaintiff's theory as to the alleged unlawfulness of his separation from the service by the New Orleans Regional Office of the Veterans Administration on October 31, 1955, has not been articulated with as much clarity as would be desirable, it appears to be the plaintiff's contention that in con-

nection with his restoration to duty on April 18, 1955, following the conclusion of the earlier litigation, he was entitled as a matter of right under Executive Order 10157, U.S.Code Congressional and Administrative News 1950, p. 1635, or Executive Order 10535, U.S.Code Congressional and Administrative News, 1954, p. 1843, to a competitive status in the civil service (rather than the status of an indefinite employee); and that if his entitlement to a competitive status had been recognized at the time, he would have had retention rights in September and October 1955 under Section 2 of the Veterans' Preference Act of 1944, as amended (5 U.S.C. § 851 (1952)), sufficient to have made him invulnerable to any reduction-in-force action that the New Orleans Regional Office of the Veterans Administration might have undertaken at that time.

Executive Order 10157 was issued by the President on August 28, 1950. It provided in part as follows:

1. Except as provided by paragraph 2 hereof, any employee of the Federal Government without competitive status who on the date of this order is serving in an active-duty status in an office or position in the competitive service of the Government shall be entitled to and shall acquire a competitive status upon compliance with the following conditions:

(a) The employee shall have served continuously in a full-time, active-duty status in the competitive service, without a break in service of more than sixty calendar days, during the two years immediately prior to the date of this order: *Provided*, that military service shall not be regarded as a break in service.

(b) If his employment is evaluated under an efficiency rating system, the most recent rating of the employee must be "Good" or better, and if his employment is not so evaluat-

ed, the head of the agency in which he is employed must certify to the Civil Service Commission that the employee has served with merit for six months or longer immediately prior to the date of such certification.

(c) The acquisition of competitive status by the employee must be recommended by the head of the agency in which he is employed within six months of the date of this order.

(d) The employee must successfully qualify in such suitable non-competitive examination as the Civil Service Commission may prescribe: *Provided*, That only one such non-competitive examination shall be given him.[1]

Executive Order 10535, which was issued on June 9, 1954, provided in part as follows:

1. The Civil Service Commission may confer a competitive status upon any employee or former employee of the Government who met the requirements for acquisition of such status * * * under Executive Order No. 10157 of August 28, 1950, as amended, but was not recommended by an agency because of administrative error: *Provided*, that such employee is recommended by the agency in which he is employed, and such former employee is recommended either by an agency desiring to reemploy him or by the agency which could have recommended him under * * * Executive Order No. 10157, as amended.[2]

It will be noted that the Executive Orders previously quoted were not self-executing. They did not automatically confer a competitive status in the civil service on any Government employee or former employee. Instead, the Executive Orders provided the machinery whereby a Government employee or former employee who met certain criteria might be

1. Executive Order 10157 appears in 3 CFR (1949–1953 Compilation) at page 337.

2. Executive Order 10535 appears in 3 CFR (1954–1958 Compilation) at page 194.

recommended by an employing agency for a competitive status and receive it from the Civil Service Commission on the basis of such recommendation. The pleadings and the documents that have been presented for the consideration of the court in connection with the pending motion for summary judgment indicate that the Veterans Administration did not make a recommendation to the Civil Service Commission that the plaintiff receive a competitive status. There certainly was no positive requirement in the Executive Orders that the Veterans Administration, on its own volition, submit a recommendation in behalf of the plaintiff to the Civil Service Commission (even if it is assumed, for the purpose of discussion, that the plaintiff met the prescribed criteria); and the pleadings and the documents before the court establish that the plaintiff, up to the time of his separation from the service on October 31, 1955, never requested the Veterans Administration to submit such a recommendation to the Civil Service Commission. At the very least, a request by the plaintiff to the Veterans Administration that the agency recommend him to the Civil Service Commission for a competitive status, and a refusal by the Veterans Administration, without justification, to make such a recommendation, would be essential prerequisites to a sound contention by the plaintiff that he was denied a competitive status because of arbitrary or capricious action (or inaction) on the part of the Veterans Administration. It was, of course, the plaintiff's lack of a competitive status which (according to the petition) made the plaintiff vulnerable to the reduction-in-force action and resulted in the plaintiff's separation from the service on October 31, 1955.

Furthermore, it appears from the documents submitted in connection with the motion for summary judgment that the plaintiff did not exhaust his administrative remedies in connection with his separation from the service on October 31, 1955, pursuant to the reduction-in-force action.

As the plaintiff was a veteran preference eligible, he was expressly given by Section 14 of the Veterans' Preference Act of 1944, as amended (5 U.S.C. § 863 (1952)), a right of appeal from the adverse action of the Veterans Administration to the Civil Service Commission, in accordance with the regulations of the Commission. The reduction-in-force regulations of the Civil Service Commission that were in effect during 1955 provided with respect to appeals that:

> Any employee who feels that there has been a violation of his rights under the regulations in this part may appeal to the appropriate office of the Civil Service Commission within 10 days from the date he received his notice of the action to be taken.
> * * *3

Within 10 days after the plaintiff received the formal reduction-in-force notice dated September 30, 1955, the plaintiff (through an attorney) took an appeal from the action of the Veterans Administration to the Regional Director of the 8th U.S. Civil Service Region at Dallas, Texas. The original appeal was in the form of a letter dated October 10, 1955, and this was supplemented by a further communication dated October 21, 1955. The plaintiff's appeal was denied by the Regional Director in a communication dated November 28, 1955, and addressed to the plaintiff's counsel. The communication stated in part as follows:

> Information secured by this regional office pertinent to appellant's appeal discloses that in keeping with his official duty assignment, Mr. Blackmar's name appears on a retention register for the competitive level of Authorization Officer, GS–11. As an indefinite employee with veterans preference, appellant's name has been placed in retention subgroup III–A. The only other employee occupying an Authorization Officer, GS–11, position is a Mr. Theodore W. Thompson who is a career employee with veterans pref-

3. 5 CFR (1949 Ed.) § 20.13.

erence. Mr. Thompson's name is in retention subgroup I–A which recognizes the fact that he has greater retention rights than Mr. Blackmar. In view of the foregoing, it is obvious that appellant's name has been properly placed on the bottom of the retention register. Thus, an abolishment of one position at the competitive level of Authorizations Officer, GS–11, placed Mr. Blackmar within reach for reduction in force.

It is fundamental that employing agencies having responsibilities for planning their work programs, likewise have the responsibilities for determining the positions required, where the positions shall be located, and when they are to be filled, abolished, or vacated. Agencies also have the authority and responsibility for determining when there is a surplus of employees at a particular location in a particular kind of work. The foregoing is recognized by instructions issued by the Civil Service Commission appearing on page R–3–4 of the Federal Personnel Manual. This reference further provides that such determinations "are not subject to question by the Commission". Thus, the determination made by the Veterans Administration to abolish the position of Authorization Officer, GS–11, may not be questioned by this regional office. Notwithstanding the foregoing, the Veterans Administration has advised that because of budgetary reasons, in keeping with its work program, an Authorization Officer, GS–11, position was abolished. They do not anticipate any marked increase in workload when they assume the processing of death cases on and after January 1, 1956. They further advise that the detail of a GS–9 Adjudicator to the competitive level of Authorization Officer, GS–11, was to cover absences at that level and was not meant to increase the number of positions performing authorization work. In view of the foregoing, contentions made on behalf of appellate challenging the agency's determination to abolish the position of Authorization Officer, GS–11, must be rejected.

In view of the above finding, the record clearly discloses that Mr. Blackmar was properly reached for reduction-in-force action. Since indefinite employees do not have mandatory reassignment rights, his separation was in order. This takes into consideration the fact that proper written notification was issued by the employing agency. Thus, appellant's appeal must be denied and no further action may be taken therein by this regional office.

If you are not satisfied with this decision, you may, if you so desire, appeal further to the Commissioners, U.S. Civil Service Commission, Washington, D. C. Any such further appeal must be made within seven days following receipt of this communication and the appeal should be addressed to this office so that the entire record pertinent thereto may be transmitted therewith.

It will be noted that the concluding paragraph of the Regional Director's letter expressly called attention to the plaintiff's further right of appeal to the Civil Service Commission within a specified time if the plaintiff was dissatisfied with the Regional Director's decision. However, there is nothing in the petition or in the documents before the court to indicate that the plaintiff took advantage of his right to obtain a review by the Civil Service Commission of the Regional Director's adverse decision.

The Supreme Court has said that it is "the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U. S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). This court has often assigned the failure of a claimant to exhaust his administrative remedies as a reason

for denying him judicial relief. McDougall v. United States, 149 F.Supp. 651, 138 Ct.Cl. 90, 93 (1957); Hutton v. United States, 154 Ct.Cl. 34, 39 (1961). The rationale behind this rule has been phrased in several ways: e. g., that questions arising between private persons and administrative agencies of the Government should be determined in an orderly fashion (United States v. Sing Tuck, 194 U.S. 161, 168, 24 S.Ct. 621, 48 L.Ed. 917 (1904)); and that administrative agencies are thereby afforded an opportunity to make adjustments and correct errors on the administrative level, thus permitting the Government to mitigate or avoid large damage claims that might otherwise be created (United States v. Joseph A. Holpuch Co., 328 U.S. 234, 239, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946)).

Therefore, the plaintiff's failure to exhaust his administrative remedies with respect to his separation from the service in 1955 is a reason why the present action cannot be maintained on the basis of the 1955 events.

The previous discussion in this part of the opinion makes it unnecessary for the court to pass upon the defendant's affirmative defenses that the plaintiff's claim with respect to the events in 1955 is barred by the 6-year statute of limitations (28 U.S.C. § 2501 (1958)) and should also be rejected under the doctrine of laches. However, a few comments on these defenses may be in order.

■ The limitations defense is based upon the view that the gravamen of the plaintiff's 1955 claim relates to the failure of the Veterans Administration to accord him his alleged right to a competitive civil service status in connection with his restoration to duty on April 18, 1955, which occurred more than 6½ years prior to the filing of the plaintiff's petition on October 26, 1961. It may be noted, however, that the Veterans Administration's allegedly wrongful failure to accord the plaintiff a competitive status did not affect him adversely in a financial way until he was separated from the service on October 31, 1955, because (according to

the petition) of his lack of a competitive status. There was no basis for a suit by the plaintiff in this court at any time between April 18 and October 31, 1955, since the Veterans Administration did not withhold any money due him during that period. Cf. Cannon v. United States, 146 F.Supp. 827, 137 Ct.Cl. 104 (1956).

■ With respect to the defense of laches, it may be noted that the pleadings and the documents before the court show that the plaintiff delayed until October 26, 1961, in filing a suit on the basis of the events that occurred in 1955. Such an unexcused delay of almost six years is ordinarily enough to invoke the bar of laches in a suit for back-pay by a separated Government employee. See, e. g., Alpert v. United States, 161 Ct.Cl. 810, 820–825 (1963). It is reasonable to suppose that after October 31, 1955, someone else performed, and was paid for, the work which the plaintiff had been doing theretofore in the New Orleans Regional Office of the Veterans Administration (cf. United States ex rel. Arant v. Lane, 249 U.S. 367, 372, 39 S.Ct. 293, 63 L.Ed. 650 (1919); Bailey v. United States, 171 F.Supp. 281, 144 Ct.Cl. 720, 722 (1959)).

It follows that the defendant's motion for summary judgment should be partially allowed and the petition should be dismissed in so far as the latter asserts a claim based upon the plaintiff's separation from the service by the Veterans Administration on October 31, 1955.

### THE 1960 REDUCTION-IN-FORCE

Another facet of the plaintiff's claim relates to the action of the Navy Department in separating him from the Government service on August 5, 1960.

Effective September 24, 1956, the plaintiff was given a temporary appointment by the Navy Department as a Realty Officer, GS–11, $6,390 per annum, in the District Public Works Office, 8th Naval District, at New Orleans, Louisiana. Subsequently, on November 1, 1959, the plaintiff received an appointment to the higher position of Supervisory Realty Officer, GS–12, $8,330 per annum, in

348

the same office. The official document effecting the plaintiff's advancement to the GS–12 position characterized it as a "Temporary Appointment." The plaintiff's salary was later increased to $8,955 per annum.

The petition alleges, and the answer admits, that the efficiency rating of the plaintiff as an employee of the Navy Department was always "satisfactory," and that his rating of February 28, 1960, which was the last one he received, contained the following commendation from his immediate superior:

The Director, Real Estate Division, takes this opportunity to express his deep appreciation to this employee for his loyalty and his devotedness to duty. Mr. Blackmar has displayed rare ability and has been tireless in his continuous efforts to carry on to successful conclusion the many complex problems representing the work load in the E–220 Branch.

Under the date of July 1, 1960, the District Public Works Office, 8th Naval District, issued to the plaintiff a reduction-in-force notice stating that at the close of business on August 5, 1960, he would be separated from his position as Supervisory Realty Officer, GS–12. The reason given for this action was: "Abolishment of your position due to curtailment of work and lack of funds caused by a reduction in the authorized level of expenditures for personnel."

In a communication dated July 6, 1960, and addressed to the District Public Works Officer, 8th Naval District, the plaintiff requested that he "be removed from Retention Group III–A and placed in Retention Group I–A as required by regulations and that the reduction in force action insofar as it affects the undersigned be held in abeyance pending the decision of the Civil Service Commission for say a period of 60 days."

Subsequently, in a letter dated July 13, 1960, and addressed to the District Public Works Officer, the plaintiff requested "that appropriate action be taken * * * to convert my present appointment to a career status in accordance with the Executive Order [10880]." The plaintiff's request was again repeated in a communication which he addressed to the District Public Works Officer on July 19, 1960.

The plaintiff's request that action be taken to secure a career status for him was denied by the District Public Works Officer on August 2, 1960. The communication from that official to the plaintiff stated (among other things) that the plaintiff's work had been "substandard" since February 28, 1960, and outlined various purported deficiencies in the plaintiff's performance of his work.

Pursuant to the reduction-in-force notice of July 1, 1960, the plaintiff was separated from his position as Supervisory Realty Officer, GS–12, at the close of business on August 5, 1960.

The plaintiff took a timely appeal to the Regional Office of the Civil Service Commission from the action of the Navy Department in effecting his separation from the service pursuant to the reduction-in-force action of July and August 1960. His appeal was denied by the Regional Office in a communication dated October 21, 1960, and addressed to the plaintiff's attorney. The communication stated in part as follows:

A careful review has been made of the record in Mr. Blackmar's case. This review discloses that in keeping with his official assignment Mr. Blackmar's name was listed on a retention register for the competitive level of Supervisory Realty Officer, GS–12. Being the only employee occupying such an assignment, Mr. Blackmar's name was the only one appearing on the register. Thus, he was properly reached for action when his position was abolished. The agency considered Mr. Blackmar, and properly so, as a retention subgroup III–A employee. In this connection the applicant was serving at the time of his separation under a temporary appointment pending establishment of a register. Such employees, under the provisions of

the Commission's Retention Preference Regulations, are considered retention group III employees for reduction in force purposes. Thus, with veteran's preference appellant, as stated above, was properly considered as being a retention subgroup III employee for reduction in force purposes.

Group III employees do not have reassignment rights when reached for reduction in force. Therefore, since Mr. Blackmar was properly reached for action, his separation was in order. This finding takes into consideration the fact proper written notice was issued in the case.

We have carefully considered your contention that Mr. Blackmar should have had his appointment converted to a Career appointment. In this connection we have reviewed Mr. Blackmar's employment record and our records in the light of Executive Orders and Public Laws cited in the appeal. These citations do not provide for an automatic conversion. The citations require recommendations or the filing of application with the Civil Service Commission requesting a conversion. There is no record indicating that such a request was made in Mr. Blackmar's case. Thus, the employee has not been improperly denied a conversion action.

The plaintiff next appealed from the action of the Regional Office of the Civil Service Commission to the Commission's Board of Appeals and Review. The Board on March 9, 1961, affirmed the decision of the Regional Office and, in doing so, stated in part as follows:

It is recognized that under the terms of Executive Order 10826 of June 27, 1959, and Executive Order 10880 of June 7, 1960, Mr. Blackmar might have been converted to career status by the Eighth Naval District Public Works Office. However, under the terms of both executive orders, a granting of conversion to career status was contingent upon a recommendation by the employing agency. Since no recommendation was made in Mr. Blackmar's case, there would be no basis for a mandatory granting of career status during Mr. Blackmar's period of service with the Eighth Naval District Public Works Office.

The total evidence reflects that Mr. Blackmar was properly reached for reduction-in-force action, and that, as a retention subgroup III–A employee, he had no enforceable right of reassignment in lieu of separation. Accordingly, it is the decision of the Board that the action separating Mr. Blackmar from the position of Supervisory Realty Officer, GS–12, effective August 5, 1960, was correct. Accordingly, the decision of the Eighth U.S. Civil Service Region is hereby affirmed.

The plaintiff thereafter, on March 17, 1961, sought a reconsideration by the Commissioners of the Civil Service Commission. However, the plaintiff's request was rejected on May 10, 1961, by the Commissioners, who stated (among other things) that "the decision issued by the Board of Appeals and Review on March 9, 1961, will remain as the final decision of the Commission in Mr. Blackmar's case and his administrative remedies in the matter were thereby exhausted."

The plaintiff alleges in the petition that, despite his "satisfactory" efficiency rating as an employee of the Navy Department, the commendation that he received from his immediate superior, and his eligibility for conversion to a career status, the Navy Department arbitrarily, capriciously, and illegally refused to make the recommendation that was necessary to effect his conversion to a career status, in accordance with his request; and that because of his lack of a career status, he was separated from the service pursuant to the reduction-in-force action of July and August 1960.

The defendant's answer denies that the refusal of the Navy Department to recommend a career status for the plaintiff

was arbitrary, capricious, or illegal. In the brief supporting its motion for summary judgment, the defendant contends that it was discretionary with the Navy Department under Executive Orders 10826 and 10880 as to whether it would or would not recommend the plaintiff's conversion to a career status, and that the reasons asserted by the District Public Works Officer in his communication of August 2, 1960, were adequate justification for the refusal of that official to recommend a career status for the plaintiff.

Executive Order 10826 was issued by the President on June 25, 1959, U.S.Code Congressional and Administrative News 1959, p. 1088. It provided in part as follows:

> Section 1. Whenever a Federal employee or former Federal employee has met the requirements of an Executive order (heretofore or hereafter issued) which provides a benefit for Federal employees but has become ineligible to receive such benefit solely because of the failure of an administrative agency, because of error or oversight, to make a timely determination or recommendation required by the Executive order, the Civil Service Commission may, to avoid inequity in individual cases, confer such benefit upon the employee or former employee: *Provided*, that the Civil Service Commission may confer such benefit only upon the making of the required determination or recommendation by the agency in which the employee or former employee is employed or is to be employed; and no action taken by the Commission under this order shall be effective prior to the date on which the action is taken.[4]

Executive Order 10880 was issued by the President on June 7, 1960. It provided in part as follows:

> Section 1. (a) Except as provided by subsection (b) of this section and

by section 4 hereof, any employee of the United States Government or of the District of Columbia Government who on the date of this order is serving in a position in the competitive service under an indefinite appointment or a temporary appointment without a definite time limitation may have his appointment converted to a career or career-conditional appointment: *Provided*, that such employee—

> (i) shall have completed two years of continuous service immediately preceding the date of this order in a competitive position or positions;

> (ii) shall be recommended for the benefits of this order by his agency within one year after the date of this order;

> (iii) shall have completed, prior to the date of recommendation by his agency, a total of continuous or intermittent satisfactory service aggregating not less than three years in a competitive position or positions;

> (iv) during the period beginning January 23, 1955, and ending on the date of this order, shall have passed a qualifying examination for a position in the competitive service in which he served during such period, or shall meet such noncompetitive examination standards as the Civil Service Commission shall prescribe with respect to the position held at the time of the agency recommendation for conversion of his appointment; and

> (v) shall meet the requirements prescribed by the Civil Service Commission under section 5 of this order.
> * * * * * *

> Sec. 5. The Civil Service Commission may prescribe such regulations as may be necessary for carrying out the provisions of this order.[5]

---

4. Executive Order 10826 appears in 3 CFR (1959–1963 Compilation) at page 362.

5. Executive Order 10880 appears in 3 CFR (1959–1963 Compilation) at page 412.

■ Although administrative officials, in connection with the program for the conversion of Government employees to a career status, were vested with a discretionary function in determining whether personnel under them would or would not be recommended for conversion (Gaines v. United States, 131 F.Supp. 925, 132 Ct.Cl. 408, 416 (1955)), it was not permissible for this discretionary function to be exercised in an arbitrary or capricious manner (Schaller v. United States, 288 F.2d 700, 153 Ct.Cl. 42, 48, 50 (1961)).

■ The pleadings and the documents before the court seem to present for determination a material issue of fact as to whether the District Public Works Office of the 8th Naval District acted arbitrarily or capriciously (as contended by the plaintiff) in refusing to recommend to the Civil Service Commission, at the plaintiff's request, that he be given a career status, and in retaining him in a temporary appointment for reduction-in-force purposes, or whether the agency acted reasonably and in good faith when it declined to recommend a change in the plaintiff's status (as contended by the defendant). In this connection, the circumstances that (as shown by the pleadings) the plaintiff's efficiency rating was "satisfactory" throughout his employment by the Navy Department and he received a commendation from his immediate superior cannot be regarded as conclusively establishing his entitlement to a recommendation from the Navy Department that he be given a career status. Conversely, because of the hearsay rule, the statements in the letter dated August 2, 1960, from the District Public Works Officer cannot be regarded as constituting proof of the plaintiff's purported deficiencies in the performance of his work.

■ Obviously, a controversy on a material issue of fact such as this is not suitable for resolution on a motion for summary judgment. See Rule 64(d).

Accordingly, it appears that the motion for summary judgment must be denied

in so far as it relates to the portion of the plaintiff's claim based on the reduction-in-force action of August 5, 1960, so that the commissioner may proceed to develop the facts on this issue.

### RETIREMENT BENEFITS

The plaintiff further alleges in the petition that he is entitled to a retirement annuity from the defendant.[6]

The defendant's answer denies that the plaintiff is entitled to any relief on this (or any other) aspect of his claim.

■ In support of its motion for summary judgment, the defendant has submitted documentary material indicating that, by virtue of an action which the Civil Service Commission took on July 11, 1962, the plaintiff's right to a retirement annuity was recognized, and that this involved the issuance to the plaintiff of a check retroactively covering retirement benefits due the plaintiff for the period prior to July 1962.

The plaintiff, in his opposition to the defendant's motion for summary judgment, seemingly concedes that he has been receiving a retirement annuity pursuant to the Civil Service Commission's action, but asserts that the annuity has been improperly computed to his disadvantage.

This presents another controversy concerning a material issue of fact that cannot properly be disposed of on a motion for summary judgment. Consequently, the pending motion should be denied in so far as it relates to the plaintiff's claim for retirement benefits, so that the facts concerning this aspect of the case may also be developed by the commissioner.

For these reasons, the court partially allows the defendant's motion for summary judgment and dismisses the petition in so far as the latter asserts a claim based upon the plaintiff's separation from the service by the Veterans Administration on October 31, 1955; the motion for summary judgment is otherwise denied.

6. The provisions of law providing retirement benefits for Government personnel are codified in 5 U.S.C., Chapter 30 (1958).