[Civ. No. 21378.  Second Dist., Div. Two.  Mar. 20, 1956.]

JAMES S. DRESSER, Appellant, v. CITY OF TORRANCE et al., Respondents.

[Civ. No. 21379.  Second Dist., Div. Two.  Mar. 20, 1956.]

MINNIE D. SMITH, as Special Administratrix, etc., Appellant, v. CITY OF TORRANCE et al., Respondents.

John E. McCall and James C. R. McCall for Appellants.

James M. Hall and Stanley E. Remelmeyer for Respondents.

MOORE, P. J.—Appellants were employees of the city of Torrance as building inspector and assistant building inspector, respectively, for salaries of $457 and $388 per month. They had been appointed by the city manager to such positions in the classified civil service of the city in May 1950 and in July 1949. To qualify for such positions they had successfully taken competitive examinations. Their employment opened up to them all the rights and privileges of civil service employees, including tenure during good behavior. Both were suspended March 10, 1954. Pursuant to their demand, the city manager filed charges on March 12. Appellants filed answers within 10 days and at once requested a review of the accusations. On April 14 both were tried before the civil service board sitting as a board of review pursuant to provisions of Ordinance 326 on the written charges of the city manager that appellants had failed to enforce Ordinances 462 and 643 adopting certain Uniform Building Code provisions, and had failed to maintain adequate records of inspections. The Smith accusation set forth 12 specifications, while the Dresser charge alleged 10.

The conclusions and decision of the board (Exhibit A) were signed and filed on April 22. The board were "in agreement" that conditions in the building department needed correcting and concluded that appellants had not been given sufficient instruction properly to perform their duties, and that neither accused was thoroughly familiar with the requirements of the Uniform Building Code; that Smith had been negligent and that "there is a real need for an in-service training program for all building inspectors." They recommended the institution of such program. It was the decision of the board that Dresser be suspended for 75 days without pay, and Smith 60 days without pay from March 10, 1954, to be then

"reinstated to their previous positions with all rights restored."

When the city council convened on April 27, 1954, the clerk read the "communication from the Civil Service Commission" (Exhibit A) and another document, purported "findings of fact and judgment from the Board of Review, Civil Service Commission" which, according to the minutes but not the fact, found Dresser and Smith guilty of having failed to "enforce violations" of specified ordinances and provisions of the Uniform Building Code, and having "failed to maintain adequate records on inspections." By motion duly carried, the council voted to "approve the findings of the Civil Service Board, excluding the recommendations and the decision." By two other motions carried unanimously, Dresser and Smith were "removed from the services of the City of Torrance."

At a meeting of the city council on May 25, 1954, a petition of each appellant was presented to set aside the orders of removal of April 27. The council was advised by City Attorney Hall that the council's action of April 27 was "definitely subject to challenge." Nevertheless, the council unanimously resolved that the action of April 27 with reference to both appellants be reaffirmed.

### ACTION FOR WRIT OF MANDATE

Basing their petition upon the nullity of the council's action in removing them permanently from the city's services, but not contesting the authority of the board of review to suspend them, appellants separately filed petitions for writs of mandate to compel the council to reinstate them in the same offices they held prior to their suspension by the city manager. Dresser computed his damages at $14.75 per calendar day, and Smith his at $12.75; both prayed for damages from the dates of reinstatement set by the board, and according to their respective salaries.

The city council had no authority to remove either appellant. Ordinance 326 provides for civil service for the city of Torrance, and in section 14, the "findings and conclusions of the Board of Review may contain such recommendations as said Board shall deem warranted, and *shall be adopted by the* City Council or *appointive officers,* except that where said decision relates to an officer or employee appointed by the City Council, said Council may, by four-fifths vote, modify or overrule such decision. *The decision and recommendations of the Civil Service Commission* and any action taken by the City Council *shall be final and conclusive.*"

The council's power to overrule the board of review did not come into action under Ordinance 326 as the employees involved were appointed by the city manager and not by the city council. The "appointive" officer, Mr. Stevens, should have received the official communication of the board of review which was "final and conclusive" for suspension for a certain number of days, and then for reinstatement.

Respondents' contention that as heads of departments, appellants could be removed by the city council by overruling the board's decision is without support in fact or law. The charter of Torrance, article VII, section 5(e) gives to the city manager the supervision and control over heads of departments and the power to control the administrative functions of such departments; to appoint, from civil service eligibility lists, *heads of departments*; to prefer charges against them "in the manner prescribed by . . . Civil Service Ordinance"; but any decision of the civil service board or trial board may be overruled by an affirmative vote of four members of the city council.

Subsection (e) does not include either Dresser or Smith as they were both in the "Building Department" as inspectors, and not as department heads. This is clear as to Smith who was an assistant inspector. As to Dresser, it appears that his efficiency reports were signed by "Geo. W. Stevens" (the city manager) as "Dept. Head." If Dresser was not a department head, section 14 of Ordinance 326 above quoted governs the matter of review.

The positions of both suspendees were filled immediately by "temporary" appointments (Ordinance 326, § 14). Such appointees received higher salaries than those paid appellants when the building department was "reorganized." The new inspectors are not permanent.

Instead of following the course prescribed by the charter and Ordinance 326, the council attempted to oust appellants from their civil service status without their having been convicted of any wrong by the reviewing board. The action of the city council was without authority, and unless upset by judicial action would result in the ruthless deprivation of vested rights.

In a mandamus proceeding to review the conduct of a local administrative tribunal, the chief issue is whether the person affected has been accorded a hearing as prescribed by law and whether there was substantial evidence to support the charge. (*La Prade* v. *Department of Water & Power,*

27 Cal.2d 47, 53 [162 P.2d 13].) ▮ Inasmuch as both appellants were in the service of the city and were civil employees, and had been disciplined by the trial board, the action of the city council was ultra vires, illegal and void. Its power in this instance was limited to that of approving the action of the board. It had no power at all to remove appellants, with or without a complaint and a trial. The council sat in a quasi-judicial capacity, it could go no further than the reviewing board had gone, after notice. No ordinance or charter provision authorized it to enlarge a penalty fixed by the board. (*Peters* v. *Hobby*, 349 U. S. 331 [75 S.Ct. 790, 99 L.Ed. 1129].) In the case of an officer appointed by the council, it has power to modify or overrule the board's decision (under the ordinance); in the case of a department head appointed by the city manager, the council may overrule the trial board by vote of four members (under charter). This means to annul or reduce the penalty, but not to increase it. (*Peters* v. *Hobby, supra.*)

As a result of the city council's action, appellants' names were stricken from the payroll of the city and from the roll of civil service employees; they were excluded from their employment. Despite the language of the city charter and of the Ordinance 326 providing for classified service of "all employees who are regularly and continuously employed in the service of the City," the council reaffirmed its April 27th order on May 25. No salary has been paid to Dresser since 75 days after March 10, 1954, when his legal suspension expired, although he stands in constant readiness with ability to perform the services for which he was employed. No salary was paid to Smith starting 60 days after his suspension, although he stood ready, willing and able until his death on February 8, 1956.

### Were Appellants Guilty of Laches?

Four months and 19 days after the city council's final action discharging appellants, the latter served petitions for writs of mandate upon respondents, and filed them on October 18, 1954. The trial court made finding that within the period between the final action of the city council and the serving of the petitions, "the City of Torrance, through its city council, has completely reorganized its building department and has made all building inspectors subordinates to the head of the building department, and has employed building inspectors to take" the places which were formerly occupied

by petitioners; that petitioners were "aware of said reorganization plan as it was accomplished by ordinance, and took no step to inaugurate the present proceeding until the reorganization plan was consummated." Basing its action upon such finding, relief was denied both appellants.

## WAS CITY PREJUDICED BY DELAY?

The finding that the city of Torrance was prejudiced by reason of the delay in filing the petitions appears to have been based upon the theory (1) that such a change had resulted from enactment of Ordinance 724 on January 4, 1955, (2) that new employees had in the interim been placed upon the city's payroll and (3) if appellants should be reinstated, the city would be required to pay two salaries for each position filled by such reinstatements. In the first place, the positions vacated by the suspensions of appellants were promptly filled by "temporary appointments" of Messrs West and Walsh by the city manager within two days after the suspension on March 10, 1954. As to the so-called reorganization of the building department, the respondents' answer alleged that each petitioner "was aware of said reorganization plan as it was accomplished by Ordinance." This is denied in petitioners' replication and the transcript shows that no oral evidence was taken and there was no written evidence to overcome that denial. The finding that the city council "has made all building inspectors subordinates to the head of the building department, and has employed building inspectors to take" the places formerly occupied by appellants is borrowed from the answer. The finding itself discloses that positions substantially identical with those held by appellants are still in being. The fact that all building inspectors now are subordinates of the "head of the building department" does not disqualify either appellant. They were already subordinate to some higher authority. That the salaries of the so-called new positions are greater than those formerly paid appellants could cause no detriment to the city. Its city charter or city council fixed the new salaries for such men as might qualify according to law. Appellants were qualified.

When was the "reorganization" accomplished? Ordinance 724 aiming at such purpose was not passed until January 4, 1955. At that time, the board of review had failed to find appellants guilty of any wrong and had merely ordered their suspensions. The record discloses that the board tried appellants on the charges filed against them by the city manager,

adopted findings and made a decision, but nowhere does it appear that they convicted appellants of wrong-doing: the court found they did not do so. The board determined that the building inspectors had not been given sufficient instructions; that Dresser "was not thoroughly familiar with the requirements of the Uniform Building Code" and that Smith "was not as familiar with the Code as he should have been and that he was negligent in his duties." The appointees to the positions vacated by the suspension of appellants took their places as temporary employees on March 12, 1954. Hence, the city could not be liable for their removal.

The trial court did not consider the merits of the controversy. It determined that inasmuch as appellants had waited four months and 19 days to file their petition herein, they were guilty of laches and could not recover without regard to the justice of their cause. ■ Now, there is no laches without prejudice suffered by him who pleads it. (*Hayman* v. *City of Los Angeles,* 17 Cal.App.2d 674, 680, 681 [62 P.2d 1047].) Prejudice is not presumed. We have shown above that the city suffered no prejudice. It cannot be maintained that prejudice was suffered by the city's employment of Walsh and West in the positions vacated by the suspension of appellants. ■ It is presumed that a position in the public service vacated by discharge or suspension will be filled. (*Hayman* v. *City of Los Angeles, supra.*) ■ But it is not shown that respondents could not reinstate appellants. The lapse of four months and 19 days before they filed their petitions raised no presumption of prejudice from such delay. (*Almassy* v. *Los Angeles County Civil Service Com.,* (Cal. App.) 200 P.2d 846, 856.) It was said in the Almassy decision that the mere lapse of four months from the date of the action of the commission has not "been held to give rise to a presumption of prejudice."*

Neither is there any proof of prejudice. If prejudice cannot be presumed, and if it is not proved, there is no laches to support the judgment below. ■ It is not merely the lapse of time that constitutes laches, but rather the consequences of the delay. (*Jones* v. *City of Los Angeles,* 120 Cal.App.2d 858, 861 [262 P.2d 37] ; *Hayman* v. *City of Los Angeles, supra.*) While many decisions have approved of brief periods as sufficient to constitute laches, such instances are based upon

---

*A hearing was granted (34 Cal.2d 387 [210 P.2d 503]) and the case was decided upon other grounds. However, the language of Mr. Presiding Justice Shinn quoted in the text appeals to us as sound.

the failure of the plaintiff to show reasons for his delay. (*United States ex rel. Arant* v. *Lane*, 249 U. S. 367 [39 S.Ct. 293, 63 L.Ed. 650].) The instant cause does not fall in that category. Appellants had been busily engaged in their sessions with the city manager, the trial board and the city council from March 10 to May 25. To file a petition for mandamus required the painstaking labors of one or more lawyers, their research, preparation of pleading and many conferences. They filed the petition October 18, 1954. The intervening period is not greater than the time frequently consumed by a court in deriving a judgment after all arguments have been made and briefs filed. The counsel retained by appellants were experienced lawyers. In view of their capabilities, it cannot be said that in taking the time to file, they needlessly delayed the commencement of the action. They had to consider not only the restoration of appellants, but the question of the measure and the amount of damages. Reinstatement and damages were both allowed in *Brown* v. *State Personnel Board*, 43 Cal.App.2d 70, 73 [110 P.2d 497]. There relief was granted notwithstanding a delay of over two years in filing action. In view of the issues involved, the pleadings to be prepared, the ordinances, charter, decisions to be studied and considered, conferences to be held, the delay of appellants in filing their petitions was not unreasonable in view of the groundless action taken by the city council.

But whatever might be said of the merits of the case or of appellants' delay in filing, it is a basic element of our juridical system that the deprivation of any person of his possessions or his office may be only according to law. That policy was not followed herein. Because the city council acted contrary to law, its order is of no legal significance. Also, in keeping with the principle of tenure by public employees, Ordinance 326 makes provision in case of "reduction of personnel due to the abolition of a position" that within two years "the discharged employee shall be preferred over any other qualified persons for such position."

It is ordered that both judgments be and they are reversed.

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied April 18, 1956, and the opinion and judgment were modified to read as printed above.