[Civ. No. 31767.   Second Dist., Div. One.   Dec. 6, 1967.]

WILLIAM McLEOD, Plaintiff and Appellant, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

Gladys Towles Root and K. E. Nungesser for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Jack L. Wells and Consuelo B. Marshall, Deputy City Attorneys, for Defendants and Respondents.

FOURT, J.—This is an appeal from a judgment after the sustaining of a demurrer without leave to amend.

William McLeod on June 2, 1966, filed a petition in the Superior Court of Los Angeles County wherein, among other things, he alleged the incorporation of the City of Los Angeles] that the members of the board of civil service commissioners of the city were duly appointed and acting; and that the police department of the city operates under the charter provisions of the city. He further alleged that he was appointed a member of the police department about October 1, 1955, and served until about July 2, 1965, and that on the latter date he was wrongfully and with coercion forced to resign from the department; that he was subjected to intensive interrogation without legal counsel and was falsely accused of misconduct and deprived of due process of law; that another member of the department charged likewise was not dismissed; that he, petitioner, maintained an excellent record and conducted himself properly; that as a consequence petitioner has been deprived of employment, retirement benefits and other benefits without just cause. Petitioner sought a writ to compel the city to reinstate him as a member of the department, and for all other proper relief in the premises and for costs.

A demurrer to the petition was sustained and petitioner filed an amended petition in the superior court on July 25, 1966. Petitioner realleged the formal allegations of the first petition and then set forth that on August 30, 1965, petitioner had petitioned the board of civil service commissioners for reinstatement to the department in accordance with the provisions of section 112½ of the city charter. A copy of the document submitted to the board of civil service commissioners was attached to the complaint wherein it was stated, in effect, that petitioner rescinded his resignation of July 2, 1965. The reasons for the stated rescission in general were that he, the petitioner, was under pressure, that he was told that if he would resign no criminal charges would follow, that if he did not resign for "personal reasons" that upon inquiry by any prospective employers the files and records with reference to the charges of Beverly Tate would be made available, that his resignation came on July 2, 1965, after

hours of interrogation, all without counsel, and that the grand jury did not bring in a criminal bill against him.

It was further alleged that by letter of October 7, 1965, the board of civil service commissioners directed to petitioner a report dated September 27, 1965, wherein the board indicated that it had received and filed the demand. Petitioner also realleged his service in the department, his coerced resignation, his intensive interrogation, the false charges leveled against him, his past record with the department and then sought the same relief as mentioned in the original petition.

An answer and a demurrer were filed in behalf of the city and the city authorities. The demurrer was sustained without leave to amend and judgment of dismissal was ordered on December 5, 1966. A timely notice of appeal was filed.

Section 112½ of the Los Angeles City Charter reads:

"Whenever it is claimed by any person that he has been unlawfully suspended, laid off or discharged, and that such lay-off, suspension or discharge is ineffective for any reason, *any claim for compensation must be made and a demand for reinstatement must be presented in writing within ninety days* following the date on which it is claimed that such person was first illegally, wrongfully or invalidly laid off, suspended or discharged. *Such demand for reinstatement must be filed with the Board of Civil Service Commissioners and such claim for compensation for such allegedly wrongful, illegal or erroneous discharge must be filed with the City Clerk.* Failure to file such demand for reinstatement within the time herein specified shall be a bar to any action to compel such reinstatement and proof of filing such a demand for reinstatement must be completed and proved a condition precedent to the maintenance of any action for reinstatement. Proof of filing the claim for compensation within the time and in the manner herein specified shall be a condition precedent to any recovery of wages or salary claimed to be due on account of said lay-off, suspension or discharge. Except as herein specified, such claims for compensation shall conform to the requirements of Sections 363, 369 and 376 of this charter." (Italics added.)

Insofar as the record discloses, petitioner never did file a claim for compensation with the city clerk pursuant to the above set forth section of the charter. It is further noted that there is no allegation in the petition to the effect that petitioner had exhausted all administrative remedies provided for by section 112½ of the charter, nor is there any allegation which purports to explain why petitioner waited about eight

months after his claim was denied before instituting his action.

Appellant asserts that in the proceedings brought by him he was attempting to be reinstated, that he has the right to seek reinstatement of his wages or compensation in another proceeding because, as he contends, section 112½ of the charter does not apply to a policeman. Further, he argues that it was error to sustain the demurrer upon any theory of laches and that the statements made by him advised of his right to counsel.

We have concluded that it was proper, under the circumstances, to sustain the demurrer and to award judgment to the defendants.

". . . [T]he rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." Compliance with this rule is a "jurisdictional prerequisite to resort to the courts." (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 292, 293 [109 P.2d 942, 132 A.L.R. 715].)

This court in *City of Los Angeles* v. *Superior Court*, 246 Cal.App.2d 73, in answering a contention that section 112½ of the charter was inapplicable to police officers, stated as follows at page 78 [54 Cal.Rptr. 442] :

". . . [I]t is our conclusion that the cases of *Varela* [107 Cal.App.2d 816 (238 P.2d 62)] and *Temple* [92 Cal.App.2d 177 (206 P.2d 909)] properly followed the *Moreno* [20 Cal.2d 531 (127 P.2d 914)] decision and were correctly decided. (In each case a hearing by the Supreme Court was denied.) The applicability of section 112½ does not depend upon the method of prosecuting charges against an employee but, rather, upon the nature of the claim made by the employee after his discharge. The crucial holding of these cases is that section 112½ applies to any civil service employee, including a policeman and a fireman, who claims that he has been unlawfully suspended, laid off or discharged. Although in *Moreno, Varela* and *Temple* there was an alleged coerced or involuntary resignation which was held to be tantamount to an unlawful discharge, the police officer in *Stoker* v. *Bowron* [129 Cal.App.2d 671 (277 P.2d 439)] was removed by an order of discharge following the filing of a complaint and a finding by the board of rights, all as provided in section 202. It was there contended by the discharged officer, as it is by Heckl, that section 112 does not apply to firemen and policemen; that section 202 provides a complete procedure for trial

and punishment by a board of rights with regard to charges against a policeman, and that the three-year limitation of subdivision (16) thereof was applicable; that, since the Civil Service Commission has no jurisdiction over disciplinary proceedings against firemen and policemen and has no authority to grant a rehearing, it necessarily follows that section 112½ has no application to them. The court held that since the discharged employee had alleged 'a wrongful discharge,' compliance with section 112½ of the city charter was a prerequisite to the maintenance of an action. The court relied upon the *Varela* case and also referred to *Lorenson* v. *City of Los Angeles* [41 Cal.2d 334 (260 P.2d 49)], in which the Supreme Court held that the provisions of section 112½ did *not* apply since plaintiff therein had not made 'the claim which is essential to the applicability of section 112½,' stating (41 Cal.2d at p. 341) : 'Other charter provisions which the city also urges as requiring reversal of the judgment clearly do not apply. For instance, with respect to section 112½, *plaintiff* has not claimed that he was illegally, wrongfully, or invalidly "suspended, laid off or discharged." Rather he has at all times protested his belief, and his right to believe, that the order of the chief of police temporarily relieving him from duty, although unjust and unfounded in ultimate truth, was legal and valid until such time as the board of rights had disposed of the charge against him.'

"In the instant case, as in *Moreno, Varela* and *Temple,* Heckl claims that his resignation was made under duress and was illegal from the date of said resignation. He, accordingly, places himself squarely within the provisions of section 112½."

Petitioner in this case states, in part, that this proceeding is only for reinstatement and not for any compensation, yet he also contends that he can, under another separate proceeding, claim and collect compensation for the period from the date of his resignation and his reinsatement. There is, of course, no waiver of any back salary and no allegation of such. We think the charter provision contemplates that if a policeman has in mind the collection of money for his services from the date of his resignation that he should make the claim in accordance with the provisions of the charter.

The work of the police department must go on and the presumption is that petitioner's position was promptly filled after his resignation. In fact, appellant in his brief indicates that the position was probably filled the day following his

resignation. See *Newman* v. *Board of Civil Service Comrs.,* 140 Cal.App.2d 907, 910-911 [296 P.2d 41], where it is said:

"In *United States* ex rel. *Arant* v. *Lane* [249 U.S. 367 (63 L.Ed. 650, 39 S.Ct. 293)], it is pointed out that 'When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified *the government service may be disturbed as little as possible,* and that two salaries shall not be paid for a single service.' (Italics added.)

"In *Corcoran* v. *City of Los Angeles, supra,* this court said (p. 842 [136 Cal.App.2d 839 (289 P.2d 556)]) : 'With respect to actions brought by discharged public officers and employees to obtain reinstatement, it has been uniformly held that they must act with the utmost diligence in asserting their rights.' If unreasonable delay occurs, prejudice is presumed. [Citation.] However, such presumption does not arise in every situation for often the delay in asserting a party's claim to reinstatement in a public employment is excusable. [Citation.]

"In *Atlantic City* v. *Civil Service Com. of New Jersey* [3 N.J. Super. 57 (65 A.2d 535)], a discharged employee attempted to avoid the consequences of laches by waiving his claim for compensation for the period between the date of his dismissal and the filing of his suit. In discussing this question the court stated: 'This waiver should not nor does it warrant this court eliminating from our consideration the fact of Barratta's unwarranted inaction. In *Marjon* v. *Altman, supra* [120 N.J.L. 16 (197 A. 724)], Mr. Justice Heher stated: "Moreover, the long delay was clearly disadvantageous to the municipality, in that reinstatement would entail liability for double compensation, to say nothing of the *detriment that frequently flows from the uncertainty respecting the incumbent's status.*" ' (Italics added.)

"Assuming *arguendo,* petitioner has waived* and can waive effectively back salary [citation], she does not thereby entirely eliminate prejudice to the city by her undue delay in filing suit for reinstatement. If petitioner were reinstated in her old position her successor would naturally have to be displaced and no doubt reinstated in another position, thus displacing another employee. This disruptive process might

---

"*On July 27, 1953, petitioner filed a claim for salary with the city clerk. It was denied by the city council on November 18, 1953."

well continue on down through the department. Such uncertainty is detrimental to employee morale and to the department's efficiency and effectiveness. The service to the public is thereby disturbed and consequently suffers. [Citations.]''

See also *Wolstenholme* v. *City of Oakland,* 54 Cal.2d 48, where the court stated at page 50 [4 Cal.Rptr. 153, 351 P.2d 321]:

''(1) Public policy requires that an employee of a public body who claims to have been improperly or illegally discharged must act with the utmost diligence in asserting his rights. [Citations.]

''(2) It is presumed that where one has been dismissed from an active position in the public service, someone else has been chosen to take his place. [Citations.]

''(3) If a discharged public employee delays unreasonably in bringing an action to obtain reinstatement, prejudice is presumed. [Citations.]''

In the case at bench it appears on the face of the record that petitioner waited about eight months before instituting an action in the matter after it was determined that his resignation was not to be overturned. There is no allegation in the petition with reference to this delay. Petitioner's choice in bringing his action apparently was deliberate and uninfluenced by any promises or suggestion of reinstatement. He chose to remain silent and inactive when vigilance and alertness were required of him. There was no explanation apparently for the inertia—except perhaps that he stood in the shadow of an indictment by the grand jury and which under the circumstances is no excuse and in any event no allegation is made with reference thereto. There was by the delay an acquiescence by the petitioner which precludes him from now litigating the matter. He was a police officer of about ten years' experience, presumably he was well acquainted with his rights and to wait eight months before doing anything is too long under the circumstances. The taxpaying public has an interest which is entitled to some protection.

We hold that under the circumstances petitioner was guilty of laches in not commencing his action within due time. His pleadings made no allegation of excuse for the delay.

We have considered petitioner's other contentions and find no merit therein.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.