[L. A. No. 29660. In Bank. Dec. 10, 1969.]

ALBERT R. CONTI, Plaintiff and Respondent, v.
BOARD OF CIVIL SERVICE COMMISSIONERS OF THE
CITY OF LOS ANGELES et al., Defendants and Appellants.

COUNSEL

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Jack L. Wells and John B. Rice, Deputy City Attorneys, for Defendants and Appellants.

Arthur Lewis and Burton Marks for Plaintiff and Respondent.

OPINION

TOBRINER, J.—Petitioner[1] Albert Conti brings mandamus to compel respondents City of Los Angeles and Board of Civil Service Commissioners of the City of Los Angeles to vacate the proceedings of the board of December 17 and 29, 1965, at which the board sustained the discharge of petitioner as a blacksmith with the Department of Water and Power. Although we reject petitioner's contention that the board is estopped to dispute his reinstatement, we hold, in accord with the findings of the Superior Court of Los Angeles County, that these proceedings denied him procedural due process in that the petitioner neither obtained an opportunity to speak at the December 17 hearing nor received notice of the December 29 meeting. The principal issue presented by the case, however, is whether laches bars petitioner's action. Respondents rely upon *Wolsten-*

---

[1]On this appeal from the lower court's order granting a writ of mandamus, the parties will be referred to by their designations in the trial court.

*holme* v. *City of Oakland* (1960) 54 Cal.2d 48 [4 Cal.Rptr. 153, 351 P.2d 321], for the proposition that in a reinstatement action prejudice must be presumed from undue delay; we conclude that this proposition cannot be justified and the case should be overruled. Consequently, since we do not presume prejudice, and since respondents did not prove prejudice, the defense of laches fails. Because respondents may possess evidence of prejudice which, relying on *Wolstenholme,* they did not introduce, we reverse the order of the superior court and remand for a new trial on the issue of laches.

On January 8, 1965, petitioner, an employee of the Department of Water and Power, was arrested and charged with bookmaking in violation of Penal Code section 337a. On January 11 the department suspended petitioner from employment. He appealed the suspension to the Board of Civil Service Commissioners but the board postponed the hearing to await the results of the criminal trial. Following petitioner's conviction on the charge, on July 6, 1965, the department dismissed petitioner. He again appealed to the board, and on October 7, 1965, the board conducted a hearing on his appeals from both the suspension and the dismissal.

Section 112 of the Charter of the City of Los Angeles (Stats. 1957, p. 4530) from which the board derives its authority, provides in part: ". . . If after such investigation said board finds, in writing, that the grounds stated for such removal, discharge or suspension were insufficient or were not sustained, and also finds in writing that the person removed, discharged or suspended is a fit and suitable person to fill the position from which he was removed, discharged or suspended, said board shall order said person so removed, discharged or suspended to be reinstated or restored to duty. The board with the consent of the appointing authority may also order a reduction in the length of the suspension, or substitution of a suspension for a removal or discharge, if the board finds, in writing, that such action is warranted. The order of said board with respect to such removal, discharge or suspension shall be forthwith certified to the appointing board or officer, and shall be final and conclusive; . . . ."

After the board had completed the taking of testimony at the hearing of October 7, 1965, the presiding officer, Commissioner Maltz, announced he would entertain a motion for discharge. Commissioner Garcia then stated, "Mr. Chairman, I do not believe that there was sufficient evidence for this Board to sustain a discharge. Therefore, Mr. Chairman, I move that the Board of Civil Service Commissioners do not sustain the Discharge."

The motion carried by a three-to-two vote. Commissioner Maltz then announced that: "Inasmuch as the Discharge has not been sustained, I will at this time entertain a motion concerning the Suspension. . . ." Commissioner Harrison moved: "I recommend to the Board that it finds this

Suspension be sustained, and that said Suspension shall be effective until December 1, 1965; further, that said Suspension shall be without pay." The motion carried unanimously.[2]

To summarize the October 7 hearing in terms of the requirements of section 112, the board resolved that there was not sufficient evidence to sustain the discharge, but did not make a written finding that petitioner was "a fit and suitable person to fill the position from which he was removed." The board did not substitute, nor seek consent to substitute, the suspension for the discharge; rather, the discharge and the suspension were the subjects of two separate orders and appeals, and the board overturned the discharge but upheld the suspension.

On December 1 petitioner reported for work but learned that the department had not provided for the resumption of his employment. On December 17 the board addressed itself to petitioner's case and Mr. Maltz inquired of Jack Wells, deputy city attorney, as to the validity of the October motions. Mr. Wells advised that since the board had not rendered findings sufficient to compel reinstatement or sustain a discharge, the board's action could not be legally effective. Commissioner Garcia moved that the general manager of the Department of Water and Power be requested to consent to a substitution of a suspension in lieu of discharge. The motion carried three votes to one. The board then approved a second motion sustaining the suspension.

On December 21, 1965, the general manager of the department sent the board a letter refusing his consent to the substitution of a suspension for the discharge. At its next meeting on December 29, 1965, the board, completely reversing its previous position, adopted a motion that the action of the department in discharging petitioner be upheld.

Despite petitioner's presence at the December 17 hearing, he was not permitted to speak. He did not attend the December 29 hearing; he testified, and the trial court found, that the board had neglected to notify him of that hearing.

1. *Laches*

Petitioner submitted to the board a "Demand for Reinstatement"

---

[2]Commissioner Maltz then discoursed on the lax enforcement of rules against gambling in the department, warning that the board would be much harsher with subsequent violators. Mr. Wesson, a deputy city attorney, asked whether the board was requesting a substitute penalty. Mr. Maltz replied, "I want it made crystal clear that the Discharge was not sustained, and we are asking the Department's assistance, and we are begging its cooperation to create a possibility there where this man, after eleven years of good, solid employment can return on December 1, and I think that is the issue at stake."

but the board denied it on February 18, 1966. Petitioner did not file his mandamus action until August 23, 1966; since a draft of an alternative writ did not accompany the complaint, the matter lay dormant until petitioner's counsel discovered the omission and set the case for hearing on January 12, 1967. Asserting that petitioner's delay of 10 months and 25 days[3] in filing his action and scheduling it for hearing was unreasonable and prejudicial, respondents interpose a defense of laches.

The trial court expressly found "that Petitioner and his counsel were not guilty of laches in fact; the delay was excusable and inadvertent." Although the trial court exercises a wide discretion in deciding whether to sustain a defense of laches,[4] we cannot uphold its finding in this case. Petitioner pleaded that he delayed filing this action from February 1966 until August 1966 when the transcripts in his criminal appeal were completed and the opening brief on appeal was filed in that proceeding; that the delay from August to January 1967 resulted from the negligent failure of his attorney's secretary and of the courthouse filing service to transmit an alternative writ with the complaint. Respondents denied these allegations; neither party, however, introduced evidence at trial to support or rebut them.

We do not read the trial judge as finding that a delay of over 10 months represents a reasonable period for the preparation and filing of the petition and service of the alternative writ, and thus the delay need not be explained or excused; we would entertain serious doubts as to any such finding. We believe the trial judge found the delay, on the facts of this case, to be "excusable and inadvertent." Petitioner, however, did not introduce any

---

[3]The reported California cases upholding laches as a defense to reinstatement involve delays ranging from eight months (*McLeod* v. *City of Los Angeles* (1967) 256 Cal.App.2d 693 [64 Cal.Rptr. 394]) through one year seven months in *Wolstenholme* v. *City of Oakland* (1960) 54 Cal.2d 48 [4 Cal.Rptr. 153, 351 P.2d 321], to a maximum of five years in *Pacheco* v. *Clark* (1941) 44 Cal.App.2d 147 [112 P.2d 67]. Twelve of the fourteen cases involve delays longer, in many cases substantially longer, than the delay of petitioner.

A three- or four-year statute of limitations applies to a mandamus action to review an administrative decision. (See Deering, California Administrative Mandamus, § 8.5 (Cont.Ed.Bar 1966).) The many cases finding laches for delays of far less than three or four years may indicate that the limitation period, although suitable for a truly original mandamus action, is far too long for a proceeding which in substance is a form of appellate review of an administrative decision. The Administrative Procedure Act (Gov. Code, §§ 11370-11528), which does not apply to local agencies such as respondent (see *Allen* v. *Humboldt County Board of Supervisors* (1963) 220 Cal.App.2d 877 [34 Cal.Rptr. 232]) requires that mandamus to review an administrative decision be filed within 30 days after the decision becomes final, with extensions if needed to prepare the record. (Gov. Code, § 11523.)

[4]*Newport* v. *Hatton* (1924) 195 Cal. 132, 147 [231 P. 987]; *Lewis* v. *Superior Court* (1968) 261 Cal.App.2d 736, 740 [68 Cal.Rptr. 681]; *Pratt* v. *Pratt* (1919) 43 Cal.App. 261, 279 [184 P. 956].

evidence to support this finding; it cannot rest upon the controverted claims of the pleadings; it cannot be sustained.

■ The trial court also expressly found that "the Respondents . . . have suffered no legal or factual detriment." Indeed, respondents point to no evidence of prejudice resulting from petitioner's delay but, relying upon our decision in *Wolstenholme* v. *City of Oakland, supra,* 54 Cal.2d 48,[5] contend that in an action for reinstatement to public employment prejudice must conclusively be presumed from unreasonable delay. In *Wolstenholme* a discharged employee delayed bringing her action for reinstatement for about one year and seven months after her employment terminated. She presented evidence that a suitable vacancy existed and offered to waive any claim for back salary The court, however, held that her laches barred the action, stating that: "Public policy requires that an employee of a public body who claims to have been improperly or illegally discharged must act with the utmost diligence in asserting his rights. [Citations.] It is presumed that where one has been dismissed from an active position in the public

---

[5]California appellate cases before *Wolstenholme* show an inconsistent pattern. In cases arising on the pleadings, the courts presumed prejudice if the petition disclosed an unreasonable and unexplained delay. (*Newman* v. *Board of Civil Service Comrs.* (1956) 140 Cal.App.2d 907, 910-911 [296 P.2d 41]; *Corcoran* v. *City of Los Angeles* (1955) 136 Cal.App.2d 839, 844-845 [289 P.2d 556]; *Hicks* v. *City of Los Angeles* (1955) 133 Cal.App.2d 214, 219-220 [283 P.2d 1046]; *Jones* v. *City of Los Angeles* (1953) 120 Cal.App.2d 858, 861 [262 P.2d 37]; *Pacheco* v. *Clark* (1941) 44 Cal. App.2d 147, 151 [112 P.2d 67]; *Hayman* v. *City of Los Angeles* (1936) 17 Cal. App.2d 674, 680-681 [62 P.2d 1047]; *Doan* v. *City of Long Beach* (1933) 130 Cal. App. 526, 528 [20 P.2d 777]; *Kramer* v. *Board of Police Comrs.* (1919) 39 Cal.App. 396, 401 [179 P. 216]; *Donovan* v. *Board of Police Comrs.* (1916) 32 Cal.App. 392, 399-400 [163 P. 69]; see *Campbell* v. *City of Los Angeles* (1941) 47 Cal.App.2d 310, 314-315 [117 P.2d 901] (unreasonable delay a defense; no mention of prejudice).) The cases do not specify whether a petitioner could avoid a demurrer by affirmatively pleading lack of prejudice.

If, however, an appeal follows a trial on the merits no cases speak of a conclusive presumption of prejudice because of unreasonable delay; one case apparently utilized a rebuttable presumption (*Kimberlin* v. *Los Angeles City High School Dist.* (1953) 115 Cal.App.2d 459 [252 P.2d 344]), and three cases, after reviewing the authorities, held that prejudice is an issue of fact and cannot be presumed. (*Dresser* v. *City of Torrance* (1956) 140 Cal.App.2d 42, 48 [294 P.2d 962]; *Brown* v. *State Personnel Board* (1941) 43 Cal.App.2d 70, 78-82 [110 P.2d 497]; *La Shells* v. *Hench* (1929) 98 Cal.App. 6, 15-17 [276 P. 377]; cf. *Fry* v. *Board of Education* (1941) 17 Cal.2d 753, 761 [112 P.2d 229] (petitioner sought recovery of back pay, but not reinstatement).)

A similar pattern appears in other jurisdictions. At the pleading stage many federal cases presume prejudice from an unexplained delay (see *Blackmar* v. *United States* (1965) 354 F.2d 340, 347 [173 Ct. Cl. 1035]) or hold laches from such delay without mention of prejudice (e.g., *Bailey* v. *Macy* (10th Cir. 1967) 378 F.2d 1021; *Chiriaco* v. *United States* (5th Cir. 1964) 339 F.2d 588). When the action goes to trial, however, the court passes on the issue of prejudice as one of fact without benefit of presumptions. (See *Coughlin* v. *Ryder* (E.D. Pa. 1966) 260 F.Supp. 256 (prejudice found); *Powell* v. *Zuckert* (D.C. Cir. 1966) 366 F.2d 634, 638 (prejudice not found).)

service, someone else has been chosen to take his place. [Citations.] If a discharged public employee delays unreasonably in bringing an action to obtain reinstatement, prejudice is presumed." (P. 50.) Although *Wolstenholme* supports respondents' position, we believe that the presumption of prejudice there proclaimed should be reconsidered.

Presumptions are either conclusive or rebuttable. (Evid. Code, § 601.) *Wolstenholme* does not clearly state whether the presumption of prejudice is rebuttable.[6] Courts of Appeal have disagreed on the character of the presumption; *Wisuri* v. *Newark School Dist.* (1966) 247 Cal.App.2d 239, 245 [55 Cal.Rptr. 490], indicated it was rebuttable, but *McLeod* v. *City of Los Angeles* (1967) 256 Cal.App.2d 693 [64 Cal.Rptr. 394], held it conclusive. We believe, however, that neither a conclusive nor a rebuttable presumption offers an appropriate means for resolution of the issue.

We have consistently rejected the concept that lapse of time less than the period of limitations in itself constitutes a defense.[7] The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains[8] or prejudice to the defendant resulting from the delay.[9] As pointed out in *Brown* v. *State Personnel Board* (1941) 43

---

[6]Since *Wolstenholme*, two cases have come before this court involving delay in seeking reinstatement. In *Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382 [29 Cal.Rptr. 657, 380 P.2d 97], petitioner's action was filed four years after discharge, but the court found that his cause of action, due to respondent's estoppel, did not arise until July 1958, six months before filing. The court rejected the defense of laches, stating that "[m]oreover, as to the delay caused by filing in December rather than July 1958, the record shows no prejudice to the city board." (P. 399.) In *Mass* v. *Board of Education* (1964) 61 Cal.2d 612 [39 Cal.Rptr. 739, 394 P.2d 579], the San Francisco Board of Education sought to dismiss a tenured teacher. The action did not reach trial within the three-year period of Code of Civil Procedure section 583. The majority opinion, approving reinstatement, placed the responsibility for this delay upon the Board of Education (p. 621 fn. 4), the plaintiff in the action; the dissent, however, argued on authority of *Wolstenholme* that laches barred reinstatement.

[7]*Gerhard* v. *Stephens* (1968) 68 Cal.2d 864, 904 [69 Cal.Rptr. 612, 442 P.2d 692]; *Maguire* v. *Hibernia Sav. & Loan Soc.* (1944) 23 Cal.2d 719, 735-736 [146 P.2d 673, 151 A.L.R. 1062]; *Brownrigg* v. *deFrees* (1925) 196 Cal. 534, 538 [238 P. 714]; *Cahill* v. *Superior Court* (1904) 145 Cal. 42, 46-47 [78 P. 467]; *Lux* v. *Haggin* (1886) 69 Cal. 255, 267 [4 P. 919, 10 P. 674]; *Hopson* v. *National Union etc. Cooks & Stewards* (1953) 116 Cal.App.2d 320, 326 [253 P.2d 733]; *Zakaessian* v. *Zakaessian* (1945) 70 Cal.App.2d 721, 726-727 [161 P.2d 677]; *La Shells* v. *Hench, supra,* 98 Cal.App. 6, 15-16.

[8]*Stevenson* v. *Boyd* (1908) 153 Cal. 630, 636 [96 P. 284, 19 L.R.A. N.S. 525]; *Lux* v. *Haggin, supra,* 69 Cal. 255, 270-271; *Hopson* v. *National Union etc. Cooks & Stewards, supra,* 116 Cal.App.2d 320, 326. No facts appear which indicate that petitioner Conti acquiesced in his dismissal, and respondents do not suggest that acquiescence can be presumed.

[9]*Gerhard* v. *Stephens, supra,* 68 Cal.2d 864, 904; *Maguire* v. *Hibernia Sav. & Loan Soc., supra,* 23 Cal.2d 719, 736; *Cahill* v. *Superior Court, supra,* 145 Cal. 42, 46-47; *Newport* v. *Hatton* (1924) 195 Cal. 132, 148 [231 P. 987]; *Alexander* v.

Cal.App.2d 70, 79 [110 P.2d 497]: "If because of his delay in seeking his remedy, without offering a satisfactory explanation for the delay, a prejudice results to his adversary, he will be precluded from enforcing his demand. It is not so much a question of the lapse of time as it is to determine whether prejudice has resulted. If the delay has caused no material change *in statu quo, ante,* i.e., no detriment suffered by the party pleading the laches, his plea is in vain." These requirements apply equally to the defense if raised by a public agency.[10]

Conclusively to presume prejudice is, of course, to hold that prejudice no longer constitutes an element of the defense of laches; to do so would, in effect, revive the discredited defense of "stale claims" which we repudiated in *Maguire* v. *Hibernia Sav. & Loan Soc.* (1944) 23 Cal.2d 719, 735 [146 P.2d 673, 151 A.L.R. 1062]. A conclusive presumption, moreover, would unjustly deny redress to an unlawfully discharged employee but produce no corollary, definite benefit to the employing agency. We recognize that unreasonable delay in seeking reinstatement will sometimes work prejudice, either because reinstatement would require discharge of a substitute employee or because the employing agency might be compelled to incur a double payment consisting of back pay to the discharged employee and salary to his replacement.[11] But, as Chief Justice Gibson pointed out in his dissenting opinion in *Wolstenholme,* such matters, if true, are easily provable by the employing agency. (54 Cal.2d at p. 54.)

Many public agencies employ thousands of persons; vacant positions suitable for reinstatement of a discharged employee may occur with regularity. If a suitable vacancy exists, the discharged employee, by waiving his claim to back salary and other benefits, can often eliminate the last vestige of prejudice. During the nine years following *Wolstenholme* we have seen a tremendous expansion in the roster of public employees, as well as a concurrent increase in turnover of jobs. These factors have at once reduced the likelihood that prejudice would accrue to the public agency by

*State Capital Co.* (1937) 9 Cal.2d 304, 313 [70 P.2d 619]; *Lewis* v. *Superior Court* (1968) 261 Cal.App.2d 736, 740-741 [68 Cal.Rptr. 631]; *Laing* v. *Occidental Life Ins. Co.* (1966) 244 Cal.App.2d 811, 821 [53 Cal.Rptr. 681]; *Field* v. *Bank of America* (1950) 100 Cal.App.2d 311, 314 [223 P.2d 514].

[10]Defenses of laches offered by public agencies were rejected for failure to prove prejudice in *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 460 [326 P.2d 484]; *Fry* v. *Board of Education* (1941) 17 Cal.2d 753, 761 [112 P.2d 229]; *Dresser* v. *City of Torrance* (1956) 140 Cal.App.2d 42, 47-49 [294 P.2d 962]; *Brown* v. *State Personnel Board* (1941) 43 Cal.App.2d 70, 79-83 [110 P.2d 497]; *Silver Burdett Co.* v. *State Board of Education* (1940) 36 Cal.App.2d 714, 719 [98 P.2d 533]; *La Shells* v. *Hench, supra,* 98 Cal.App. 6, 16-17.

[11]See *Wisuri* v. *Newark School Dist.* (1966) 247 Cal.App.2d 239, 245 [55 Cal. Rptr. 490]; *Newman* v. *Board of Civil Service Comrs.* (1956) 140 Cal.App.2d 907, 911 [296 P.2d 41]; *Doan* v. *City of Long Beach* (1933) 130 Cal.App. 526 [20 P.2d 777].

requiring reinstatement and also augmented the number of those who would be adversely affected by a conclusive presumption of prejudice.

Rebuttable presumptions affect either the burden of producing evidence or the burden of proof. (Evid. Code, § 601.) A presumption of prejudice which places upon the plaintiff the burden of producing evidence is plainly undesirable, since the facts respecting available positions, work dislocation, and salary duplication are more readily available to the employing agency than to the discharged employee.

"A presumption affecting the burden of proof is a presumption established to implement some public policy. . . ." (Evid. Code, § 605.) Although we recognize that a rule which required a discharged employee to act with diligence in seeking reinstatement would find support in public policy (see *United States* ex rel. *Arant* v. *Lane* (1919) 249 U.S. 367, 372 [63 L.Ed. 650, 652, 39 S.Ct. 293]), we must weigh against that factor the important considerations of public policy which militate against any presumption that would shift the burden of proof onto the employee. The telling consideration must be that laches constitutes an affirmative defense[12] which does not reach to the merits of the cause; the courts, in placing the burden of proving laches on the defendant,[13] do so in aid of the salient policy favoring resolution of controversies on their merits.

A presumption shifting the burden of proof necessarily shifts also the burden of producing evidence (see Evid. Code, § 550, subd. (b)). The employing agency which enjoys better access to data respecting prejudice should bear the burden of producing the pertinent evidence. If we were to impose a presumption shifting the burden of proof of prejudice to the employee, we would be compelled to invoke a counter-presumption retransfering the burden of producing evidence to the agency, thus creating a structure of cross-presumptions that would promote only a policy of confusion.

As the minority stated in *Wolstenholme*: "In view of the serious consequences involved, no presumptions should be created judicially unless there are compelling reasons for doing so." (54 Cal.2d at p. 53 (dissenting opn. of Gibson, C. J.).) We conclude that cases in which probative evidence on prejudice is unavailable and in which resolution will therefore

---

[12]*Wells Fargo Bank* v. *Dowd* (1956) 139 Cal.App.2d 561, 577 [294 P.2d 159]; *Holmes* v. *Holmes* (1950) 98 Cal.App.2d 536, 538 [200 P.2d 603]; *Ryan* v. *Welte* (1948) 87 Cal.App.2d 897, 905 [198 P.2d 357]; *Smallpage* v. *Turlock Irr. Dist.* (1938) 26 Cal.App.2d 538, 544 [79 P.2d 752].

[13]*Hohn* v. *Riverside County Flood Control etc. Dist.* (1964) 228 Cal.App.2d 605, 615 [39 Cal.Rptr. 647]; *Curbelo* v. *Matson Nav. Co.* (1961) 194 Cal.App.2d 305, 310 [14 Cal.Rptr. 913]; *Katz* v. *Enos* (1945) 68 Cal.App.2d 266, 276 [156 P.2d 461]; *Brown* v. *Oxtoby* (1941) 45 Cal.App.2d 702, 707 [114 P.2d 622].

turn on the existence or nonexistence of the presumption will be rare or nonexistent; they hardly form the "compelling reason" for imposing a presumption of prejudice. If prejudice does realistically accrue, we see no reason why the public agency should not be able to prove that fact without the assistance of presumptions.

For the foregoing reasons we overrule *Wolstenholme* v. *City of Oakland* (1960) 54 Cal.2d 48 [4 Cal.Rptr. 153, 351 P.2d 321], and disapprove those decisions of the Court of Appeal decided under authority of *Wolstenholme: McLeod* v. *City of Los Angeles* (1967) 256 Cal.App.2d 693 [64 Cal.Rptr. 394], and *Wisuri* v. *Newark School Dist.* (1966) 247 Cal.App. 2d 239 [55 Cal.Rptr. 490]. We likewise disapprove the following cases to the extent that they hold or imply that prejudice is presumed, or that unreasonable delay, without more, is a defense to an action for reinstatement: *Newman* v. *Board of Civil Service Comrs.* (1956) 140 Cal.App.2d 907 [296 P.2d 41]; *Corcoran* v. *City of Los Angeles* (1955) 136 Cal.App. 2d 839 [289 P.2d 556]; *Hicks* v. *City of Los Angeles* (1955) 133 Cal. App.2d 214 [283 P.2d 1046]; *Jones* v. *City of Los Angeles* (1953) 120 Cal.App.2d 858 [262 P.2d 37]; *Kimberlin* v. *Los Angeles City High School Dist.* (1953) 115 Cal.App.2d 459 [252 P.2d 344]; *Campbell* v. *City of Los Angeles* (1941) 47 Cal.App.2d 310 [117 P.2d 901]; *Pacheco* v. *Clark* (1941) 44 Cal.App.2d 147 [112 P.2d 67]; *Hayman* v. *City of Los Angeles* (1936) 17 Cal.App.2d 674 [62 P.2d 1047]; *Doan* v. *City of Long Beach* (1933) 130 Cal.App. 526 [20 P.2d 777]; *Kramer* v. *Board of Police Comrs.* (1919) 39 Cal.App. 396 [179 P. 216]; *Donovan* v. *Board of Police Comrs.* (1916) 32 Cal.App. 392 [163 P. 69].

■ We cannot accept respondents' further procedural argument that petitioner's complaint fails to state a cause of action in that it shows unreasonable delay on its face without stating a sufficient excuse. Laches may be raised by demurrer, but only if the complaint shows on its face unreasonable delay *plus* prejudice or acquiescence. (See *Zakaessian* v. *Zakaessian* (1945) 70 Cal.App.2d 721, 726-727 [161 P.2d 677]; 2 Witkin, Cal. Procedure (1954) 1477-1478.) In the absence of prejudice or acquiescence delay does not establish a defense; petitioner therefore need not plead excuse or explanation.

### 2. Procedural due process

■ Petitioner asserts that he was denied due process in that: (a) the board did not permit him to speak at its December 17 meeting; (b) the board failed to notify him of its December 29 meeting; and (c) the board did not afford him an opportunity to rebut the allegations of a letter dated December 21 from the Department of Water and Power to the board which alleged that he was the organizer and principal actor in the bookmaking operation. Respondents reply that the board did not receive

evidence at the hearings of December 17 and 29; the proceedings consisted of no more than deliberations of the board as to penalty after the completion of the introduction of testimony. In substance respondents contend that petitioner is entitled to one fair hearing, not a multiplicity of hearings (see *Dami* v. *Department of Alcoholic Beverage Control* (1959) 176 Cal.App.2d 144, 151 [1 Cal.Rptr. 213]), and that he received such a hearing in October.

At the conclusion of the October proceedings, however, the board had apparently overturned petitioner's discharge. The hearings of December 17 and 29 were not *deliberations in closed conference* or executive session; they were *public* meetings. Petitioner attended the December 17 meeting and sought recognition to speak; the board refused him that opportunity. And the failure of the board to notify petitioner of the December 29 meeting resulted not from any intention that the meeting would constitute a private deliberation of the board but from clerical mistake. Nor did the board at these sessions limit the proceedings to a discussion of the evidence and arguments adduced at the October hearing. At the December 17 meeting the board heard an opinion from counsel for the city that the October proceedings were void; petitioner was not given an opportunity to counter that assertion. At the December 29 meeting the board reviewed the December 21 letter from the Department of Water and Power which alleged that petitioner was the ringleader of the bookmaking activities; petitioner was afforded no opportunity to rebut these serious accusations. Petitioner was entitled both to notice of the meetings and to an opportunity to be heard;[14] since the October 7 hearing was adjourned without fully disposing of petitioner's appeal, he is likewise entitled to notice of subsequent meetings and to an opportunity to be heard at those proceedings.

### 3. *Estoppel*

■ We cannot accept petitioner's contention that the board is estopped to contest his reinstatement.[15] Petitioner argues that he reasonably understood that the board at the October hearing reinstated him as of December 1, that he relied on the action of the board, and thus that respondents should be barred from denying his reinstatement. Even though the elements of an estoppel may appear (see *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]), we cannot discern how this showing benefits petitioner.

---

[14]See *Fascination, Inc.* v. *Hoover* (1952) 39 Cal.2d 260, 264-265 [246 P.2d 656]; *Drummey* v. *State Board of Funeral Directors & Embalmers* (1939) 13 Cal.2d 75, 80-81 [87 P.2d 848]; *Golberg* v. *Regents of the University of California* (1967) 248 Cal.App.2d 867, 881 [57 Cal.Rptr. 463].

[15]Petitioner first raised the issue of estoppel in his traverse to respondents' answer, which petitioner filed 12 days after trial.

Petitioner contends that, expecting to be reinstated on December 1, he did not seek other employment. If petitioner were claiming back wages for the period October 7-December 1, respondents might well be estopped to assert his failure to seek other employment in mitigation of damages. Petitioner, however, abandoned his claim for back wages in order to strengthen his defense to laches.

Petitioner further asserts that, in reliance on the October proceedings, he did not initiate court proceedings until after December 1. Such reliance might estop respondents from including the period October 7- December 1 in any computation of the statutory period of limitation or of laches. Respondents do not raise the issue of the statute of limitations, however, and their defense of laches does not include delay occurring before the denial of petitioner's demand for reinstatement.

### 4. Proceedings on remand

In view of the invalidity of the December proceedings, the case now stands in the same posture as at the conclusion of the October hearing. Consequently we must determine the legal effect of the motions adopted at that hearing. Respondents contend that the motions lack validity; petitioner claims that they conclusively established petitioner's right to reinstatement. We reject both contentions and affirm the ruling of the trial court that the board on October 7 found that petitioner's discharge was not sustained, but that, since the board did not find that petitioner was "a fit and suitable person to fill the position," that issue remains before it.

■ We first consider respondents' contentions. Respondents point out that the charter requires a finding that "the grounds . . . for . . . discharge . . . are not sustained," but that the motion relating to the discharge did not explicitly refer to "grounds" for discharge and therefore was ineffective. The minutes state: "COMMISSION ACTION: MOTION OF COMMISSIONER GARCIA: Mr. Chairman, I do not believe that there was sufficient evidence for this Board to sustain a Discharge. Therefore, Mr. Chairman, I move that the Board of Civil Service Commissioners do not sustain the Discharge." We have concluded that the commission's action fulfills the charter requirement.

We do not interpret the charter to require a finding in the exact language of the enactment but merely to command the board's consideration and rendition of findings upon two subjects: the employee's discharge and his fitness for reinstatement. The minute order of the board treats of the subject matter of petitioner's discharge; the board plainly intended to find that the grounds for discharge not be sustained; it believed it had so found. (Compare *Moss* v. *Board of Zoning Adjustment* (1968) 262 Cal.App.2d

1, 11-12 [68 Cal.Rptr. 320].) The commissioner's language in alluding to "evidence" is in substance the equivalent of the statutory designation of "grounds."

Since perfection in findings cannot be expected, courts are often compelled to interpret findings (cf. 2 Witkin, Cal. Procedure (1954) 1840-1848, 1852-1853). We construe the motion of the board of October 7, as it appears in the minutes of the board, as a written finding that the grounds stated for the removal of petitioner were not sustained. (See *Swars* v. *Council of City of Vallejo* (1949) 33 Cal.2d 867, 872 [206 P.2d 355]; *Tabory* v. *State Personnel Board* (1962) 208 Cal.App.2d 543, 546-547 [25 Cal.Rptr. 333].)

■ Since the charter posits reinstatement on written findings both that "the grounds" for discharge "were not sustained" and that petitioner "is a fit and suitable person to fill the position," respondents contend that the single finding rejecting discharge is legally insufficient. We recognize the requirement for twofold findings but can conceive of no reason why they could not be rendered at successive sessions of the board. Having adjourned its last valid meeting on petitioner's case upon a finding that in effect the grounds for his discharge were not sustained, the board has completed the first segment of its task and now remains free to consider the second: the issue of petitioner's fitness for the job.

■ Petitioner asserts that a finding of fitness is necessarily implied in the finding that his discharge was not sustained and that his suspension would stand until December 1. In passing the motion that the evidence did "not sustain the discharge" the board did not address itself to the subject of fitness at all. No finding whatsoever deals with this issue; although the board may have assumed petitioner's fitness, the record does not show that the board expressly considered and found on that issue. The board certainly intended that petitioner return to work on December 1, and if it were not for the specific requirement of written findings we could imply a finding of fitness.[16] Since the charter requires written findings, however, the oral or implied intention of the agency will not suffice; the mandate for a written finding on the subject of fitness must be met.[17]

---

[16]*Swars* v. *Council of City of Vallejo, supra,* 33 Cal.2d 867, 872; *DeMartini* v. *Department of Alcoholic Beverage Control* (1963) 215 Cal.App.2d 787, 813 [30 Cal. Rptr. 668]; *Hansen* v. *Civil Service Board* (1957) 147 Cal.App.2d 732, 735 [305 P.2d 1012]; *Sacramento etc. Dist.* v. *Pacific Gas & Elec. Co.* (1946) 72 Cal.App.2d 638, 647-648 [165 P.2d 741].

[17]In *Moss* v. *Board of Zoning Adjustment* (1968) 262 Cal.App.2d 1 [68 Cal.Rptr. 320], the city charter required that before granting a zoning variance the board must find in writing on four issues: that denial would cause unnecessary hardship, that exceptional circumstances justify the variance, that the variance would not harm the public welfare, and that it is not contrary to the objectives of a master plan. The

## 5. Conclusion

Respondents may possess evidence of prejudice resulting from petitioner's delay which, relying on the presumption of prejudice established by *Wolstenholme* v. *City of Oakland, supra,* 54 Cal.2d 48, a precedent binding· on the trial court (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), they did not present at trial. Since we overrule *Wolstenholme,* respondents should obtain the benefit of a new trial at which they can present evidence limited to the issue of laches.[18] In fairness to petitioner the new trial should also extend to him the opportunity to present evidence to explain or excuse his delay in filing this action and bringing it to a hearing.[19]

---

board adopted a motion approving the variance and directed the secretary to prepare written findings, but when these findings were presented to the board at a subsequent meeting, the board refused to approve them. The Court of Appeal reversed a superior court order that issued a mandate to grant the variance, stating that "At the very most· the action of the Board . . . indicated a feeling . . . that a variance should be granted and that appropriate findings could be made. But a feeling is not enough under the Charter of the City which requires written findings." (P. 11.)

In *Bostick* v. *Martin* (1966) 247 Cal.App.2d 179, 185-187 [55 Cal.Rptr. 322], the Savings and Loan Commissioner refused to approve a new savings and loan association, but failed to specify any of the five grounds enumerated in Financial Code section 5513. The court rejected the commissioner's request to imply findings from his refusal to approve the application.

In *State* ex rel. *Ball* v. *McPhee* (1959) 6 Wis.2d 190, 201 [94 N.W.2d 711, 717], the state sought dismissal of a tenured professor, charging him with inefficiency, noncooperation, breach of professional ethics, and incompatibility. The statute required separate written findings on each contested issue. In view of the statutory language, the court held that a single finding that the charges "are sustained" was insufficient.

See also *California Motor Transport Co.* v. *Public Utilities Com.* (1963) 59 Cal.2d 270, 273-275 [28 Cal.Rptr. 868, 379 P.2d 324] (Public Utilities Commission must find separately on material issues of fact and law; findings not implied from ultimate finding of public convenience and necessity); *Almaden-Santa Clara Vineyards* v. *Paul* (1966) 239 Cal.App.2d 860, 866-869 [49 Cal.Rptr. 256] (superior court, in exercising independent review of administrative order, failed to find on material issue); compare *Hansen* v. *Civil Service Board, supra,* 147 Cal.App.2d 732 (court approved implied finding upholding discharge of an employee, noting that the Alameda city charter did not require written findings).

[18]See Note (1962) *Prospective Overruling and Retroactive Application in the Federal Courts,* 71 Yale L.J. 907, 944-950; cf. *Rogers* v. *Richmond* (1961) 365 U.S. 534, 548-549 [5 L.Ed.2d 760, 770-771, 81 S.Ct. 735]; *Aced* v. *Hobbs-Sesack Plumbing Co.* (1961) 55 Cal.2d 573, 579-580 [12 Cal.Rptr. 257, 360 P.2d 897]: *Phelan* v. *Superior Court* (1959) 35 Cal.2d 363, 371 [217 P.2d 951]; Witkin, Cal. Evidence (2d ed. 1966) § 1309.

[19]If the superior court on retrial rejects respondents' defense of laches, the court may order the board to hold a hearing and render a written finding as to whether petitioner is a fit and suitable person to fill the position of blacksmith with the department. We make two observations respecting that hearing. First, the fitness hearing must not be a retrial of the bookmaking charges; the board, having found that evidence of petitioner's violation of Penal Code section 337a was not sufficient to sustain his discharge, cannot find that this evidence proves him unfit for the position. Second,

The judgment of the Superior Court of Los Angeles County is reversed and the cause is remanded for further proceedings consistent with this opinion.

Traynor, C. J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

**McCOMB, J.**—I concur in the judgment of reversal but not in all the statements in the opinion.

---

the grounds for a finding of unfitness, and the evidence supporting them, must rise to a level sufficient to justify termination from employment; petty charges that would not constitute "cause" for discharge cannot constitute a basis for refusing reinstatement on the ground of lack of fitness.